JOURNAL ENTRY AND OPINION
{¶ 1} Elaine Yasinow, plaintiff-appellant, appeals the trial court's May 3, 2005 judgment entry of divorce, assigning seven assignments of error relative to same. For the reasons set forth below, we affirm in part and reverse and remand in part.
 {¶ 2} The record before us demonstrates that on September 12, 2002, appellant filed a complaint for divorce and motion for support pendente lite against defendant-appellee Robert Yasinow. The magistrate granted appellant's motion for support pendente lite and issued a temporary order requiring appellee to pay appellant, effective from September 12, 2002, the sum of $1,185.64 per month in child support ($592.82 for each of the parties' two children) and $2,300 per month in spousal support, for a monthly total of $3,485.64.
 {¶ 3} On March 6, 2003, the parties filed an agreed judgment entry modifying the support order. Pursuant to the agreement, effective from September 12, 2002, appellee was to pay appellant $1,200 per month in child support ($600 for each child) and $1,600 per month in spousal support, for a monthly total of $2,800. The parties also agreed that appellant would be responsible for the mortgage, homeownwer's insurance and all the utility bills for the marital residence, where she and the children continued to reside. A provision in the agreement that appellant would be responsible for the real estate taxes on the marital home was crossed out.
 {¶ 4} The parties thereafter submitted their respective proposed shared parenting plans. Appellant also subsequently filed a motion to modify the agreed support judgment entry, in which she sought an order requiring appellee to pay the real estate taxes for the marital home. Appellee opposed the motion and the parties subsequently agreed that the issue of the payment of the real estate taxes would be held in abeyance until the final hearing.
 {¶ 5} Prior to the three-day trial before a magistrate, the parties entered into stipulations in regard to a parenting schedule, a number of support payments made by appellee, their respective incomes since 1989 and the value of a number of assets. Subsequently, on October 28, 2004, the magistrate issued his decision with findings of fact, which admitted into evidence, adopted and incorporated the parties' stipulations.
 {¶ 6} In his decision, the magistrate found, for the purpose of calculating support, appellee's income to be $99,372 per year, and imputed $20,000 per year to appellant as income. As a result of the child support computation worksheet, the magistrate ordered appellee to pay appellant the sum of $1,063.54 per month ($531.77 per child) in child support. The order was effective from June 23, 2004, the final day of the trial.
 {¶ 7} The magistrate further ordered appellee to pay appellant "the sum of $1,500 monthly as and for permanent spousal support for a period of 28 months from the journalization of the decree in this matter; or until either party dies, or [appellant] remarries or cohabitates as set forth in Ohio law."
 {¶ 8} The magistrate also ordered appellee to be credited with direct payments he made to appellant as set forth in the parties' stipulations. The magistrate deferred deciding the issue of appellee's support arrearage obligation and ordered that the matter be set for a hearing before a support magistrate.
 {¶ 9} In regard to the acquisition of the marital residences, the magistrate found that appellant and appellee had contributed equally to their acquisition. Two homes were at issue: the Emery Road house, purchased approximately six months prior to the parties' marriage and jointly titled to appellant and appellee, and the Jackson Road house, purchased after the parties' marriage, jointly titled to appellant and appellee, and the home where appellant and the children continued to reside.
 {¶ 10} The magistrate found that there was no evidence that an equal division of marital property would be inequitable and, thus, ordered an equal division of the parties' property. The magistrate additionally ordered appellant to refinance the Jackson Road residence "within 90 days from Journalization of the Decree in this matter, removing [appellee's] name from the mortgage." Appellant was then to pay appellee $161,293.50 from the refinance of the Jackson Road property to equalize the ordered division of property.
 {¶ 11} In reaching his decision, the magistrate addressed the issue of separate property. In regard to monies allegedly given by appellant's father, Larry Simon, for the purchase of the Emery Road and Jackson Road homes, the magistrate found that appellant had not met her burden of proving that the monies were either a loan to her individually or to both the parties or a separate gift to her. In regard to a portion of appellee's pension plan, the magistrate found that $19,306 in the plan was appellee's separate property.
 {¶ 12} The magistrate additionally denied appellant's request for attorney fees and motion to modify the support order, which, as previously mentioned, was relative to the real estate taxes for the marital property. In denying the motion to modify the support order, the magistrate stated "that the temporary support order issued in this case contemplated that [appellant] would pay the property taxes with [the] spousal support awarded to her."
 {¶ 13} The magistrate also ordered appellee to attend monthly anger management counseling.
 {¶ 14} Appellant and appellee both filed objections to the magistrate's decision. The trial court judge substantively denied the objections, but granted an objection by appellant only to correct a clerical error. The judge also stated that he independently reviewed the transcript and, after his review, specifically overruled appellant's objection regarding the denial of her request for attorney fees.
 {¶ 15} The judge further added a provision allowing appellee to claim the parties' children as tax exemptions. The judge ordered appellee's counsel to prepare a judgment entry consistent with the magistrate's decision and his subsequent correction and addition.
 {¶ 16} Prior to the entry prepared by appellee's counsel being filed, appellant's counsel, by way of letter, informed the trial court that it objected to appellee's entry and sought corrections of the entry. On May 3, 2005, however, the trial court filed the entry submitted by appellee, without any corrections. It is from that entry that appellant now appeals.
 {¶ 17} Initially, we note that the standard of review for the determinations made in divorce cases is generally the abuse of discretion standard. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
 {¶ 18} In her first assignment of error, appellant contends that the trial court erred by adopting the entry submitted by appellee's counsel, without any corrections. In particular, appellant challenges the following: 1) the date the entry orders for the commencement of spousal support and refinance of the marital home; 2) lack of a commencement date for child support; and 3) omission of an order compelling appellee to attend monthly anger management counseling.
 {¶ 19} As previously mentioned, the magistrate ordered that spousal support was to be paid "for a period of 28 months from the journalization of the decree in this matter; or until either party dies, or [appellant] remarries or cohabitates as set forth in Ohio law." Further, the magistrate ordered appellant to refinance the marital residence "within 90 days from Journalization of the Decree in this matter[.]" The final judgment entry, however, prepared by appellee's counsel, provides for "spousal support for 28 months from October 28th, 2004 * * * [and for] refinance * * * with[in] 90 days from October 28th, 2004 * * *."
 {¶ 20} Appellee argues that "[t]he clear intent of the [magistrate's] decision was to award Appellant an additional 28 months of spousal support from the date of the Magistrate's decision." Appellee further argues that "Appellant had a `built in' incentive to file for extensions and delay and all her objections were denied. Seven months passed from the date of the Magistrate decision until journalization."
 {¶ 21} Appellant, on the other hand, cites Civ.R. 53(E)(4)(a), maintaining that the court could modify the magistrate's decision only if there was an error of law or defect on the face of the decision. Civ.R. 53(E)(4)(a) applies in instances where there are no written objections to the magistrate's decision. As already stated, both appellant and appellee filed written objections to the magistrate's decision.
 {¶ 22} This case presents an interesting situation, though, where neither appellant nor appellee objected to the commencement date for the additional spousal support or refinance of the Jackson Road home, apparently because appellee believed the magistrate's order was from the date of the magistrate's decision, while appellant believed the magistrate's order was from the date of journalization of the final decree. Thus, we find that although there were objections to other findings of the magistrate, the lack of objection to the date now in question required, pursuant to Civ.R. 53(E)(4)(a), that "[t]he magistrate's decision shall be effective when adopted by the court."
 {¶ 23} The court adopted the magistrate's decision, save for the correction of a clerical error and the addition of the provision regarding the tax exemption. The plain language of the magistrate's decision adopted by the court provided that the triggering date for additional spousal support and refinance of the marital home was from the date of "journalization of the decree," not from October 28, 2004, the date of the magistrate's decision. The delay from the time between the date of the magistrate's decision and journalization of the decree was not occasioned by appellant. Her only action during that time frame was to timely object to the magistrate's decision, as was her legal right; appellee exercised the same right. She cannot be penalized for exercising her right. Appellant did not engage in any delay tactics. Moreover, in regard to refinance of the marital home, in adopting the entry prepared by appellee's counsel, the court ordered appellant to perform an act for which the completion date had already lapsed.
 {¶ 24} That said, we find that the trial court abused its discretion in adopting October 28, 2004 as the commencement date for the additional spousal support and refinance of the mortgage.
 {¶ 25} In regard to the commencement date for child support, the magistrate ordered that the support would be effective from June 23, 2004. The court's entry, prepared by appellee's counsel, stated only that the support order was in effect. Again, neither appellant nor appellee specifically objected to the child support commencement date, apparently for the same reasons previously stated. Thus, when the trial court adopted the magistrate's decision, the magistrate's decision was effective. The plain language of the magistrate's decision provided that the child support order would be effective from June 23, 2004.
 {¶ 26} Accordingly, we find that the trial court erred by omitting the child support commencement date in its final entry.
 {¶ 27} Appellant also maintains in this first assignment of error that the omission of an order for appellee to attend monthly anger management counseling in the trial court's final judgment entry was an abuse of discretion. For the same reasons just articulated, we find it to be an abuse of discretion in this case that the court omitted from its final judgment entry the magistrate's order, adopted by the court, requiring appellee to attend monthly anger management counseling.
 {¶ 28} Accordingly, appellant's first assignment of error is sustained.
 {¶ 29} In her second assignment of error, appellant contends that the trial court erred by failing to adopt an appropriate shared parenting plan. As stated above, both parties filed proposed shared parenting plans. The proposed plans addressed vacation times, days of special meaning, medical issues and communication between the parents, and were almost identical to each other with the exception of appellee's possession times. Prior to trial, however, the parties stipulated to the possession times, adopting the times as set forth in appellant's proposed plan. The trial court's judgment entry adopted the parties' stipulation regarding possession times, but is silent on the other issues that were addressed in the parties' proposed shared parenting plans, such as vacation times, days of special meaning, medical issues and communication between the parents.
 {¶ 30} In determining an award of custody when a shared parenting plan has been filed by both parents, the trial court must review the plans and determine whether either is in the best interest of the children. R.C. 3109.04(D)(1)(a)(ii). The same requirement of review is imposed upon the court if the parties file a joint shared parenting plan. R.C. 3109.04(D)(1)(a)(i). Here, appellant and appellee filed proposed shared parenting plans that were almost identical, with the exception of possession times. The parties subsequently agreed on possession times, however, and stipulated to same. Thus, in essence, after the stipulation, the parties agreed to the remaining issues in their shared parenting plans.
 {¶ 31} In its judgment entry, the court stated the following in regard to shared parenting:
 {¶ 32} "The Court has reviewed the plan for the exercise of shared parenting in accordance with O.R.C. 3105.65(B) and O.R.C.3109.04(D)(1)(a) as appearing in the Trial Stipulations,
adopted, incorporated, and attached hereto as Exhibit `A', and determines that the plan is in the best interest of the children." (Emphasis added.)
 {¶ 33} The trial stipulations, however, do not address all the issues raised by the parties in their proposed shared parenting plans. While we suspect that the trial court intended to adopt the remaining issues set forth in the shared parenting plans, the language in the judgment entry does not clearly state that. We therefore find merit in appellant's argument and remand for clarification on this issue.
 {¶ 34} Appellant's second assignment of error is sustained.
 {¶ 35} In her third assignment of error, appellant argues that the trial court abused its discretion by awarding appellee the dependency exemptions for the parties' two children.
 {¶ 36} The controlling federal law on this issue is found in Section 152(e), Title 26, U.S.C. In effect since January 1, 1985, that section provides in relevant part as follows:
 {¶ 37} "(e) Special rule for divorced parents, etc.
 {¶ 38} "(1) In general * * *, if —
 {¶ 39} "(A) a child receives over one-half of the child's support during the calendar year from the child's parents —
 {¶ 40} "(i) who are divorced or legally separated under a decree of divorce or separate maintenance,
 {¶ 41} "(ii) who are separated under a written separation agreement, or
 {¶ 42} "(iii) who live apart at all times during the last 6 months of the calendar year, and —
 {¶ 43} "(B) such child is in the custody of 1 or both of the child's parents for more than one-half of the calendar year, such child shall be treated as being the qualifying child or qualifying relative of the noncustodial parent for a calendar year if the requirements described in paragraph (2) or (3) are met.
 {¶ 44} "(2) Exception where custodial parent releases claim to exemption for the year. For purposes of paragraph (1), the requirements described in this paragraph are met with respect to any calendar year if —
 {¶ 45} "(A) the custodial parent signs a written declaration (in such manner and form as the Secretary may by regulations prescribe) that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and
 {¶ 46} "(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year."
 {¶ 47} Paragraph three of Section 152(e) provides "an exception for certain pre-1985 instruments," which are not an issue in this case.
 {¶ 48} In interpreting this section, the Supreme Court of Ohio stated that it is not important whether a custodial parent's "written declaration" releasing a dependency claim was made voluntarily or pursuant to court order. Hughes v. Hughes
(1988), 35 Ohio St.3d 165, 518 N.E.2d 1213. The Court reasoned that the custodial parent presumption and the written declaration exception were created only "for the administrative convenience of the Internal Revenue Service * * *." Id. at 167. Thus, the Court has recognized that Section 152(e) does not limit a state court's authority to allocate the dependency exemption to noncustodial parents.
 {¶ 49} The Court further stated on this issue that "the allocation of the dependency exemption provided by Section 152(e), Title 26, U.S. Code may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child."Singer v. Dickinson (1992), 63 Ohio St.3d 408, 588 N.E.2d 86, paragraph two of the syllabus.
 {¶ 50} Here, the magistrate found that appellee earned $99,372 per year. The magistrate imputed $20,000 to appellant, although pursuant to the trial stipulations, the parties agreed that in 2003 appellant had actually only earned approximately $5,300.
 {¶ 51} Upon review, under the circumstances of this case, we do not find that the trial court abused its discretion by awarding both dependency exemptions to appellee. The relative incomes of the parties necessarily dictates that appellee could make the best use of the exemptions, which would be of little or no economic value to appellant based upon her tax bracket.
 {¶ 52} Appellant's third assignment of error is overruled.
 {¶ 53} For her fourth assignment of error, appellant maintains that the trial court abused its discretion by denying her motion to modify the support order. As previously set forth, appellant's motion was relative to the real estate taxes for the Jackson Road house, for which the court ultimately decided appellant would be responsible. Appellant essentially argues that it was the parties' intent and agreement that appellee would be responsible for the real estate taxes, as evidenced by the deletion of that responsibility from appellant's list of responsibilities in the parties' March 6, 2003 agreed judgment entry modifying the support.
 {¶ 54} While the provision in the March 6, 2003 agreed judgment entry requiring appellant to pay the real estate taxes was crossed off, the entry did not specifically state that the parties agreed that appellee would bear the responsibility for the taxes. Further, the parties' subsequent trial stipulations did not address who would be responsible for the property taxes. The issue, therefore, was an undecided one.
 {¶ 55} In considering this issue, the court reasoned "that the temporary support order issued in this case contemplated that [appellant] would pay the property taxes with [the] spousal support awarded to her."
 {¶ 56} Upon review, we do not find that the trial court abused its discretion by requiring appellant to bear the responsibility for the real estate taxes for the Jackson Road house, where she and the children continue to reside.
 {¶ 57} Appellant's fourth assignment of error is overruled.
 {¶ 58} Appellant's fifth assignment of error sets forth the following four issues upon which she claims the court abused its discretion: 1) its findings relative to whether property was marital or separate; 2) its failure to include her debts in evaluating the net assets to be distributed to the parties; 3) its valuation of the parties' IRA accounts; and 4) its failure to equitably divide the parties' assets.
 {¶ 59} The issues of marital versus separate property and appellant's alleged debts are interrelated and will be discussed together.
 {¶ 60} R.C. 3105.171(A)(3) defines marital property generally as property or interest in property that is owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage.
 {¶ 61} R.C. 3105.171(A)(6)(a) (b), governing separate property, provides as follows:
 {¶ 62} "(6)(a) `Separate property' means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
 {¶ 63} "* * *
 {¶ 64} "(ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;
 {¶ 65} "* * *
 {¶ 66} "(vii) Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.
 {¶ 67} "(b) The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable."
 {¶ 68} In regard to residential property, the trial court found that appellant failed to prove by the required clear and convincing evidence her separate property allegations. Appellant challenges this finding, arguing that funds provided by her father, Larry Simon, for the purchase of and improvements to both the Emery Road and Jackson Road homes, were either separate gifts to her or loans to herself and/or appellee,[1] which have to be repaid.
 {¶ 69} The first alleged gift or loan was for the May 1989 purchase of and subsequent improvements to the Emery Road house, which the parties purchased prior to their marriage in November 1989. Both appellant and appellee resided in that home from the time of purchase until November 1991, when they purchased the marital home. Appellant essentially argues that because her father allegedly provided funds for the purchase of this home prior to her marriage to appellee, he intended it as a gift solely to her or a loan to either solely herself or herself and appellee. We disagree.
 {¶ 70} Simply, there was no evidence before the court (other than appellant's testimony and Simon's sometimes inconsistent testimony) that Simon intended the funds he allegedly provided for the purchase of the first house, purchased approximately six months prior to the parties marrying, to be solely a gift for appellant or a loan that he expected both parties to repay. Indeed, during the course of the parties' approximate fourteen-year marriage, Simon never asked them for repayment on the alleged loan. Nor did he ask appellant to repay the alleged loan. Simon, who has been in the residential home building business for approximately fifty years, testified that he understands mortgages and promissory notes. He is not "unsophisticated" to these matters, as appellant suggests.
 {¶ 71} Thus, we are not persuaded that the funds Simon provided for the purchase of the parties' first home was a gift solely to appellant or a loan to either appellant individually or both appellant and appellee.
 {¶ 72} In regard to the Jackson Road house, appellant, as with her previous contention in regard to the first residence, argues that funds given by Simon for the purchase of and improvements to the house were gifts to her alone or loans to either herself or both of the parties.
 {¶ 73} The lack of corroborating evidence is again fatal to appellant's argument. There was no note, gift letter, or other proof that evidenced Simon's intent that the funds Simon allegedly provided were a separate gift to appellant or loan to appellant and appellee. There was no request for repayment until appellant initiated divorce proceedings. Further, by Simon's own admission, he knew that appellee was jointly titled to the home and that appellee would enjoy the benefits of the improvements made to the home.
 {¶ 74} Thus, we are not persuaded that the funds Simon allegedly provided for the purchase of the parties' homes were a gift solely to appellant or a loan to either appellant individually or both appellant and appellee.
 {¶ 75} Appellant also argues within her fifth assignment of error that the trial court erred in its valuation of the parties' Transamerica IRA accounts. Specifically, the parties stipulated that each account was worth $4,844. The court, however, valued appellant's account at $5,390.47 and appellee's account at $4,871.47.
 {¶ 76} A court has broad discretion to determine what property division is equitable. Cherry v. Cherry (1981),66 Ohio St.2d 348. Upon review, we cannot find that the trial court erred in this case in assigning an approximately $500 higher value to appellant's IRA account in equalizing the over $500,000 net assets of the parties.
 {¶ 77} Appellant's final contention within her fifth assignment of error is that, based upon her previous arguments, the trial court's division of assets was inequitable. In light of our resolution of appellant's previous arguments, we similarly find this contention to also be without merit.
 {¶ 78} Accordingly, appellant's fifth assignment of error is overruled.
 {¶ 79} Appellant's sixth assignment of error maintains that the trial court abused its discretion by awarding appellee a portion of his pension plan as his separate property.
 {¶ 80} In regard to the portion of appellee's retirement pension from his employer that the trial court assigned as his separate property, appellee's Exhibit H, admitted into evidence, a "statement of participation" unsigned by the trustee, purported to show that as of November 30, 1989, five days after the parties' marriage, the account had a value of $19,306. Appellant objected to the admission of Exhibit H as being hearsay and unauthenticated.
 {¶ 81} Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." It has been held that the authentication requirement of Evid.R. 901(A) is a low threshold standard that does not require conclusive proof of authenticity, but only sufficient foundational evidence for the trier of fact to conclude that the document is what its proponent claims it to be. State v. Easter
(1991), 75 Ohio App.3d 22.
 {¶ 82} At trial, appellee testified that Exhibit H was "an accurate and true document" of his pension account as of November 1991. He explained that he located the document in files he kept at the Jackson Road home when he and appellant were going through files as part of the divorce. Appellee testified that he was aware that appellant's counsel had subpoenaed records from his employer in order to demonstrate the premarital value of his pension, but that the employer was unable to produce such evidence. Appellee explained that it was his understanding that his employer kept such records only for five years and, thus, was unable to provide the requested documentation.
 {¶ 83} The ultimate question facing a trial court in these circumstances is whether the authentication testimony was sufficiently complete that it convinced the court of the improbability of the original item having been exchanged with another or otherwise tampered with. Easter, supra; see, also,United States v. Arias (C.A. 4 1982), 679 F.2d 363, 365-366;United States v. Brewer (C.A. 10 1980), 630 F.2d 795, 802. Once the trial court has answered that question, and the evidence is either admitted or excluded, the court's determination on the authentication issue is reversed only upon a showing of an abuse of discretion. Easter, supra, at 6; see, also, United Statesv. Whitworth (C.A. 9 1988), 856 F.2d 1268, 1283; United Statesv. Spetz (C.A. 9 1983), 721 F.2d 1457, 1476. In examining the transcripts of the proceedings below, we cannot find an abuse of discretion.
 {¶ 84} Further, in regard to appellant's argument that the document was hearsay, Evid.R. 803(A)(15) provides a hearsay exception for "statements in documents affecting an interest in property." The rule provides for the admissibility of:
 {¶ 85} "A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document."
 {¶ 86} Thus, we find that the trial court did not abuse its discretion in admitting Exhibit H into evidence. Appellant's sixth assignment of error is overruled.
 {¶ 87} For her seventh and final assignment of error, appellant argues that the trial court abused its discretion by denying her request for attorney fees. We disagree.
 {¶ 88} R.C. 3105.18(H), the statute prevailing at the time of the divorce,[2] provides as follows:
 {¶ 89} "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C.3105.18(H).
 {¶ 90} It has long been the rule that an award of attorney fees is based on, among other things, necessity, and that necessity is determined by a consideration of the parties' financial situation, including income, assets and expenses.Barone v. Barone (Sept. 1, 2000), Lucas App. No. L-98-1328.Cassaro v. Cassaro (1976), 50 Ohio App.2d 368, 363 N.E.2d 753. In Goode v. Goode (1991), 70 Ohio App.3d 125, 134,590 N.E.2d 439, the court noted that a trial court, in reviewing the record to determine the necessity and reasonableness of attorney fees, may use its own knowledge and experience.
 {¶ 91} Upon review, we cannot find that the trial court abused its discretion in denying appellant's request for attorney fees. The record demonstrates that appellant received an equalization of income and a significant amount in net assets. Appellant, moreover, was not prevented from fully litigating this matter.
 {¶ 92} Accordingly, appellant's seventh assignment of error is overruled.
Judgment affirmed in part; reversed and remanded in part.
This cause is affirmed in part and reversed and remanded in part for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Karpinski, J., concur.
[1] Generally, appellant argues in her brief that Simon gifted or loaned money solely to her, but implies at one point that he loaned money to both the parties.
[2] Appellant filed her complaint for divorce on September 12, 2003. On May 3, 2005, the court entered its final judgment, which appellant now appeals. On April 27, 2005, R.C. 3105.18(H) was repealed, and R.C. 3105.73 now governs an award of attorney fees in a divorce proceeding. Because a statute cannot be applied retroactively unless expressly provided for, the statute in effect at the time of the filing of the complaint is the one that must be applied. R.C. 1.48; Williams v. Williams (1992),80 Ohio App.3d 477; 609 N.E.2d 617.