JOURNAL ENTRY AND OPINION *Page 2 
{¶ 1} Defendant-appellant, Glenette Bostick ("Wife"), appeals the judgment of the Common Pleas Court, Domestic Relations Division, that granted her and plaintiff-appellee, James R. Bostick ("Husband"), a divorce and divided the couple's marital property. Wife contends that the trial court abused its discretion in dividing the property equally. We affirm the trial court's judgment as modified.
 {¶ 2} The record reflects that the Bosticks were married on July 31, 1971 and have two children ("Son" and "Daughter"), both of whom were emancipated when the complaint for divorce was filed. The parties separated in May 2003, and the complaint for divorce was filed on January 5, 2005. Trial before a magistrate was held on March 9, May 8, and July 18, 2006.
 {¶ 3} The parties stipulated that the marital residence was located at 1008 Hampton Drive, Macedonia, Ohio, and that the balance due on the mortgage as of December 31, 2005 was $45,363.51. Various improvements were made to the home prior to the separation; Wife had a new furnace, air conditioner, humidifier and thermostat installed after the separation, resulting in a debt of $8,000 due to Sears. Husband testified, based on his knowledge of sales of other homes in the area, that the home was worth between $200,000 to *Page 3 
$205,000. Wife produced a real estate tax bill for 2004, indicating a tax value of $161,960.
 {¶ 4} The parties stipulated that each had a small pension and the values of each were relatively similar. The parties further stipulated that Husband has life insurance polices with a cash surrender value totaling $16,145.45 and Wife has a policy with a cash surrender value of $5,416.89. Both parties also prepared lists of the furnishings and personal property at their respective residences, and both had an opportunity to inspect and inventory all items located in the other's residence in the Spring of 2005.
 {¶ 5} Husband was 58 years old at time of trial and employed as an engineer earning $78,000 annually. From 2001 to 2004, Husband made several withdrawals from his 401(K) account in order to pay for expenses incurred by him, Wife, and the children. Husband also obtained funds for these expenses by cashing in several certificates of deposit, obtaining a home equity loan, and refinancing the mortgage. Husband testified that Wife was aware of the transactions and that all of the money was deposited in the parties' joint checking account. The withdrawals from the 401(K) totaled $87,000, but the parties paid a 10% penalty and 20% tax on the withdrawals which significantly reduced the net amount of the withdrawals. As of trial, the 401(K) account balance was $110,089.69. *Page 4 
 {¶ 6} At the time of the separation, the parties jointly owed $6,700 to Sears, $700 to Ohio Savings Bank, and the home mortgage. After the separation, Husband continued to pay the mortgage, taxes, insurance, and utilities on the home as temporary spousal support. Husband paid off the Sears Mastercard account, although Wife subsequently charged items on the account. Husband also paid off the Ohio Savings Bank Mastercard and closed the account, but Wife reopened the account and used it for elective breast implant surgery. At trial, Husband and Wife disputed whether Husband knew about the surgery before it happened and approved Wife's use of the Mastercard to pay for the surgery.
 {¶ 7} Husband testified that although both Son and Daughter had been making their own car payments, both fell behind on their payments after the separation. Husband made several payments on Son's car loan, then paid to have the car repaired and eventually sold it at a loss. Husband testified that Daughter stopped making payments on her car in October 2004, so he began making the monthly payments of $242 on the loan. As of trial, Husband still owed approximately $9,000 on the car. Husband produced documentation that the Kelley Blue Book value of the car, a 2000 Honda Civic in fair condition with 96,000 miles on it, was $4,605, less than the amount still due on the loan.
 {¶ 8} Husband testified that Wife was driving a 2002 Toyota Avalon when the parties separated in May 2003. The car had been leased in Husband's name, although Wife made the monthly payments. In August 2004, Wife stopped *Page 5 
making the payments after she purchased another car, forcing Husband to make the back payments of $1,654.24, repair the car at a cost of $1,543.70, and begin making the monthly payments of $535.38. Husband took out a loan from his credit union to purchase the car and, as of trial, owed $13,955.22 on the loan. Husband produced documentation that the Kelley Blue Book value for the Avalon, in good condition with over 65,000 miles on it, was $12,310, less than the outstanding debt on the car loan. Husband testified that he drove a 2000 Honda Accord worth approximately $3,000.
 {¶ 9} Husband testified that he paid $2,400 of Wife's outstanding medical bills after the separation. He testified further that in September 2004, he gave Daughter $245 to repair the brakes on her car; in October 2004, he gave her $400 for food and gas; and in November 2004, he spent over $2,000 to help her obtain and partially furnish an apartment when she moved out of the marital home. Husband testified further that as of December 2005, he owed $12,416.25 on Son's student loan and $1,246.04 for a new computer.
 {¶ 10} Wife, who was 57 years old at time of trial, testified that she has Crohn's and celiac disease and has not been able to work for years. Wife acknowledged that she receives $1,085 per month from Social Security and $440 per month in disability, a total annual amount of $18,300, most of which is tax free. *Page 6 
 {¶ 11} She testified that Husband emotionally and physically abused her, but admitted that she never tried to prosecute Husband for his alleged domestic abuse. Wife testified that Husband did not allow her to participate in any financial decisions during the marriage and Husband told her what she was allowed to buy. Wife denied any knowledge of the 401(K) account withdrawals and denied having access to the joint account. Wife testified that she often ran out of money after the separation and would then borrow money from Check and Go. Wife testified that her son, sister, and church helped pay her bills when she ran out of money.
 {¶ 12} Although Wife claimed monthly expenses of $1,800 on her motion for temporary support in January 2005, she claimed over $3,000 in monthly expenses at trial. Wife presented no documentation to support her higher monthly expenses or her assertion that her son, sister and church helped pay her bills.
 {¶ 13} Wife testified that as of trial, she owed $821.70 to Sam's Club, $856.62 to Kohl's, and $657.33 to Verizon. Wife failed to produce any documents or statements to indicate the nature of these expenses, although she testified that the Verizon bill was incurred on Daughter's behalf. Wife testified further that she owed money on a Capital One charge card, which she asserted was used by Daughter without authorization, although Daughter testified that she used the card with Wife's permission and both she and Wife used the card. *Page 7 
Wife did not produce any statements to indicate when the card was used or for what purpose. Wife admitted that she had reopened the Ohio Savings Bank Mastercard account to pay for her cosmetic surgery. The balance due on the account as of November 2004, was $12,653; Wife failed to produce any statements regarding the account to indicate what had been paid on the account between November 2004 and trial.
 {¶ 14} Son testified that he never saw his father physically abuse his mother while he was living at home, but he sometimes saw suspicious bruises on her. Son testified that his father made the financial decisions for the family and did not allow his mother to make large-scale purchases on her own. Son admitted that he had not spoken to his father since October 2004.
 {¶ 15} On rebuttal, Husband denied ever abusing Wife. Daughter testified that she never saw her father mistreat her mother, but admitted that she was in a bitter custody dispute with her mother regarding custody of her child.
 {¶ 16} Wife filed objections to the magistrate's decision which was issued after trial. The trial court sustained Wife's objections in part and adopted the magistrate's decision as modified. The trial court entered a judgment of divorce and ordered that the marital property be divided equally. The court ordered that the marital residence be sold and the net proceeds utilized to pay off the mortgage, real estate taxes, costs of sale, any remaining balance on the Sears *Page 8 
account, the balance on the student loan for Son ($12,416.25), the credit union loan ($1,246.04), and the debts due to Sam's Club ($821.70), Kohl's ($856.62), and Verizon ($657.33), if still outstanding. The trial court further ordered that the first $7,668.78 from the proceeds of the sale of the marital home be distributed to Wife to equalize the division of property.
 {¶ 17} The trial court ordered further that Husband pay the $9,190.23 loan on Daughter's car, the credit union debt of $13,955.22 for the Toyota Avalon, and any other debts in his name. Wife was ordered to pay any balance due on the Ohio Savings Mastercard, her Capital One account, and any other debts in her name. The court ordered Husband to pay monthly spousal support of $1,600, subject to future modification by the court. It further ordered that each party pay their own attorney's fees.
 {¶ 18} On appeal, Wife argues that the trial court abused its discretion in dividing the marital property equally.
 {¶ 19} Trial courts have broad discretion in deciding appropriate property awards in divorce cases. Berish v. Berish (1982),69 Ohio St.2d 318, 319. Thus, a trial court's determination in such cases will be upheld absent an abuse of discretion. Middendorf v. Middendorf (1998),82 Ohio St.3d 397, 401. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Yasinow v. Yasinow, *Page 9 
Cuyahoga App. No. 86467, 2006-Ohio-1355, ¶ 17, citing Blakemore v.Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 20} Wife first contends that the trial court should have used her lower valuation of the marital residence, based on a 2004 real estate tax bill, rather than Husband's opinion, based on his knowledge of sales of comparable homes in the neighborhood, that the home was worth between $200,000 to $205,000. Any argument about the value of the home is moot, however, because its actual value will be determined when the house is sold and the proceeds will be divided equally between the parties.
 {¶ 21} Wife also contends that there was no evidence to support the trial court's conclusion that the funds obtained from Husband's liquidation of the certificates of deposit and withdrawals from his 401(K) account from 2000 to 2004 were used for marital purposes, the implication being that Husband misappropriated the funds for his personal use and Wife should have been compensated accordingly.
 {¶ 22} If a spouse engages in financial misconduct, including the dissipation, destruction, concealment, or fraudulent disposition of assets, a court may compensate the offended spouse with a distributive award or with a greater award of marital property. R.C. 3105.171(E)(3). The decision whether to make *Page 10 
an award under this statute is reviewed for an abuse of discretion.Hissa v. Hissa, Cuyahoga App. Nos. 79994 and 79996, 2002-Ohio-6313, ¶ 45.
 {¶ 23} The burden of proving financial misconduct is on the complaining spouse. Callender v. Callender, 7th Dist. No. 03-CA-790, 2004-Ohio-1382, ¶ 20. Financial misconduct implies some type of wrongdoing in that the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets. Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268.
 {¶ 24} When Husband moved out of the marital residence in May 2003, all of the parties' joint bank records, as well as Wife's personal bank records, remained in the home in Wife's possession. Wife refused to produce the records to Husband, so he incurred substantial expense in obtaining copies of the parties' records. Husband testified that the cost of obtaining copies of all of the cancelled checks would have been prohibitive.
 {¶ 25} Nevertheless, the complete bank records obtained by Husband for the years 2000 through 2003 indicate, as the trial court found, that most of the funds from the certificates of deposit and almost all of the 401(K) withdrawals went into the parties' joint account. Statements for the year 2000 indicate large deposits of $21,000 and $12,502.09 in February, and additional large deposits in May, August, October, and December, which were not from Husband's payroll *Page 11 
deposits. The 2001 bank statements show a deposit of $26,699.69 into the investment account in December 2001. Statements for the years 2002 and 2003 also show substantial deposits not specified as Husband's payroll deposits.
 {¶ 26} Wife had access to all of the parties' financial records, including cancelled checks, but failed to present any evidence of Husband's financial wrongdoing. Although Wife produced a 2003 bank statement which indicated that over $32,000 had been withdrawn from the parties' indexed investment account between June 2002 and July 2003, Wife offered no evidence demonstrating that Husband had misappropriated the money. Moreover, Wife's assertion that Husband wasted the entire $87,000 withdrawn from the 401(K) account fails to recognize that the parties paid a 10% penalty and 20% taxes on each withdrawal, which significantly reduced the net withdrawal amount. Husband testified that the funds were expended for improvements to the marital home, purchases of tangible personal property, and payment of expenses incurred by him, Wife, and their children; Wife offered no evidence to rebut this assertion. As the burden of proving financial misconduct is on the complaining spouse, the trial court did not abuse its discretion in concluding there were no facts which would support a finding of financial misconduct by Husband.
 {¶ 27} Wife also contends that there was no evidence to support the trial court's valuation of Husband's automobiles and Husband's "unsubstantiated *Page 12 
claims" regarding his assets and liabilities. With respect to the cars, the trial court accepted Husband's valuations as demonstrated by the Kelley Blue Book, an accepted guide to used car pricing. Although Wife contends the trial court should have used her higher valuations for the cars, as reflected in the NADA (National Car Dealers Association) Used Car Guide, Wife's NADA documents did not reflect the correct mileage for the cars. Husband testified the Toyota Avalon had 66,000 miles on it; Wife's NADA Guide valued an Avalon with 30,000 and 50,000 miles. The mileage on the Honda Accord was 96,000 miles, Wife's NADA Guide valued a Honda Accord with 50,000 and 70,000 miles.
 {¶ 28} With respect to Husband's testimony regarding his assets and liabilities,
 {¶ 29} the weight to be given the evidence and the credibility of witnesses are primarily for the trier of fact. State v. DeHaas (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, as Wife did not comply with the court's order to compel production of the parties' financial records, any argument about Husband's failure to produce those financial records is specious.
 {¶ 30} Finally, Wife argues that the trial court abused its discretion by denying her request for attorney's fees, "despite the overwhelming asset allocation in favor of [Husband] and the [Husband's] income." Under R.C. 3105.18(H), in divorce or legal separation proceedings, the trial court may award *Page 13 
attorney's fees to either party "if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party * * * it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 31} Despite Wife's assertion that the division of assets was not equitable, the trial court divided the marital property and debt equally. Wife also failed to demonstrate that she was precluded from fully litigating her rights and protecting her interest in the divorce action unless Husband paid her attorney's fees. The trial court did not abuse its discretion in ordering each party to pay their own attorney's fees.
 {¶ 32} As the distribution of property was equitable and supported by the evidence, Wife's assignment of error is overruled. Nevertheless, we sua sponte address an error not raised by Wife. *Page 14 
 {¶ 33} The trial court ordered that the property be divided as follows:

 Husband Wife
Marital Residence 1/2 Net Proceeds of Sale 1/2 Net Proceeds
401(K) Account 1/2 1/2
Life Insurance $16,145.45 $ 5,416.89
Cars $ 4,605.00 $ 0
Tangible Personal Property 1/2 1/2
TOTAL $20,750.45 $ 5,416.89
 {¶ 34} The trial court then ordered that the parties "distribute to [Wife] the first $7,668.78 from the proceeds from the sale of themarital residence minus debts paid above in order to equalize thedivision of property set forth above." (Emphasis added.)
 {¶ 35} Distributing $7,668.78 to Wife from the proceeds of the sale would result in a distribution to Husband of $20,750.45 and a distribution to Wife of $13,085.67, an obviously inequitable distribution. Clearly, the trial court intended to order that Husband pay Wife $7,668.78 from hisone-half share of the proceeds, which would result in a distribution of property of $13,081.67 to Husband and $13,085.67 to Wife.
 {¶ 36} Accordingly, the trial court's judgment is modified to reflect that Husband shall distribute to Wife $7,668.78 from his one-half share of the *Page 15 
proceeds from the sale of the marital residence to equalize the division of property set forth above. As modified, we affirm.
 {¶ 37} It is ordered that the parties share equally in the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 JAMES J. SWEENEY, A.J., and PATRICIA A. BLACKMON, J., CONCUR *Page 1