[Cite as *O'Neal v. O'Neal*, 2022-Ohio-372.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

KATHLEEN PERRY O'NEAL,            :

    Plaintiff-Appellant,            :

                            No. 110114

    v.            :

KENNETH JOSH O'NEAL,            :

    Defendant-Appellee.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED PART, REVERSED IN PART,
           AND REMANDED
**RELEASED AND JOURNALIZED:** February 10, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-19-376934

---

### *Appearances:*

James L. Hardiman, *for appellant.*

Edward M. Heindel, *for appellee.*

LISA B. FORBES, J.:

{¶ 1} Kathleen Perry O'Neal ("Kathleen") appeals from the domestic relations court's judgment granting her and Kenneth Josh O'Neal ("Kenneth") a divorce, alleging that the court erred when making various determinations concerning marital assets and spousal support. After reviewing the facts of the case

and pertinent law, we affirm the lower court's judgment in part, and reverse and remand the judgment in part.

## I.  Facts and Procedural History

{¶ 2}   Kathleen and Kenneth were married on May 29, 1999.  Kathleen filed for divorce on May 29, 2019, representing herself pro se in the domestic relations court.  The case proceeded to a videoconference trial on October 14, 2020.

### A.  Divorce Trial Testimony

{¶ 3}   For ease of discussion in this opinion, our reference to the "Evening Star" property refers to residential property that Kathleen allegedly purchased during the parties' marriage.  Kenneth's role in the purchase of this property is unclear from the evidence in the record.

{¶ 4}   Wanda Ware ("Ware") testified on behalf of Kathleen.  Ware opined that Kathleen and Kenneth's relationship was "more of a roommate type situation. He had his own room.  She had her own room.  They never did anything together. * * * I don't know if you want to call it a friendship.  It was just never like an actual marriage."   According to Ware, Kenneth "did not contribute to anything in the household, as far as doing anything.  And even on a financial end, as far as repairing anything."

{¶ 5}   Kenneth's attorney chose not to cross-examine Ware, and the context within which Ware knew Kathleen and Kenneth was never established.

{¶ 6}   Harold Hubbard ("Hubbard") also testified on behalf of Kathleen. Hubbard testified that he and Kenneth are "old friends, schoolmates.  We grew up

together."  Hubbard testified that "there was a time * * * when * * * [Kenneth] didn't have anywhere to go.  So I allowed him to move into my back room.  * * * [H]e never did pay the rent at all.  * * * I just know that he wasn't living with [Kathleen] at all for a while."

{¶ 7}   Kathleen testified in her case-in-chief as follows:

When Kenneth was fired, he withdrew his retirement under PERS, $51,000, and he blew it.

Also, my retirement from Reserve was earned prior to our marriage.

My retirement from Reserve was earned in 1998.

And the [Evening Star] property that he mentioned that should be divided was purchased by me in 2008.

{¶ 8}   Kathleen testified that Kenneth did not contribute to the "maintenance and repairs" regarding the house.  From the time the [Evening Star] property was purchased in 2008 through "four months of 2010," Kathleen made the mortgage payments and paid "half of the rent on the condominium that Kenneth moved into * * *.  He moved into that condominium because he had been evicted from two other places * * * for nonpayment of rent."

{¶ 9}   According to Kathleen, Kenneth purchased a house in 2004, and "contributed 700."  Kathleen "contributed 400."  Kenneth "stopped paying the note.  And the house went into foreclosure."  At some point, Kenneth moved into the Evening Star house with Kathleen.  "He paid 400."

{¶ 10} Kathleen testified that Kenneth "won the case against the foreclosure in Oakwood Village, he received a total of * * * $34,000 restitution. * * * And he spent that money."

{¶ 11} On cross-examination, Kathleen testified that she and Kenneth were married on May 29, 1999, and they have no children together.  She receives $956 per month in "Reserve retirement"; $3,000 per month in "Coast Guard retirement"; and $153 per month in "other money."  Kathleen started working for the Coast Guard in October 1967 and retired on July 3, 2014.  Kathleen conceded that her retirement benefits "acquired during the marriage" were from 1999 to 2014.

{¶ 12} Kathleen purchased the Evening Star property on November 7, 2008, when she was married to Kenneth.  Kathleen testified that the Evening Star property is worth "approximately $69,000"; however, she also testified that she had "no idea" how much a reasonable buyer might pay for the property.  She further testified that she owed $72,500 on the mortgage, as well as "[t]ax liens because I haven't filed income taxes" since 2015.

{¶ 13} Kenneth testified on his own behalf.  He is employed by the "Cleveland Playhouse Theaters," where he is "in-house security" and receives "after taxes $1,800 a month."  Kenneth was a deputy bailiff at "the court" from November 1986 to 2003, when he "walked off and * * * never returned."  He withdrew his PERS contribution, which amounted to "around about $60,000."  Kenneth testified that the money "is all gone now."  Specifically, he stated as follows:  "I was taking care of my personal business because I didn't have a job at that time."

{¶ 14} According to Kenneth, he did not know that Kathleen bought the Evening Star property in 2008 until "the people that came to my job for me to sign them papers — boom, that's when I knew she went out and bought the house." He testified that he and Kathleen lived in the house together starting in 2009, and he paid "400 on the mortgage" until he moved out in September 2019.

{¶ 15} Kenneth testified that he "looked it up," and the house was worth "over $100,000." He testified that he has a 401(k) from "Playhouse Theatre," but he does not know how much "is in it." He has worked at the Playhouse since July 24, 2004.

### B. The Journal Entry

{¶ 16} On October 27, 2020, the court granted the parties a divorce and made the following findings of fact and conclusions of law pertinent to this appeal:

### DIVISION OF PROPERTY

The Court finds the parties have obtained the following real property during their marriage, all of which is determined to be assets of the marriage: 15716 Evening Star Avenue, Maple Heights, Ohio 44137. The property was purchased in 2008. [Kathleen] testified the home was purchased for approximately $69,000.00 and is encumbered by a mortgage of approximately $72,000.00.

* * * [T]he real property located at 15716 Evening Star Avenue, Maple Heights, Ohio, 44137 is hereby ordered immediately sold and the parties shall split equally the proceeds and/or the deficiency on the property.

* * *

The Court finds the parties have the following retirement [assets] earned during the marriage: a Coast Guard pension held by [Kathleen] and a Fidelity 401K earned by [Kenneth].

* * * It is * * * ordered [that] all of the aforementioned retirement assets are [marital] in nature and shall be divided equally among the parties. * * * It is further ordered * * * [that] each party shall be entitled to gains and losses on their respective shares of the retirement accounts.

* * *

The Court finds [that Kathleen] maintains the following life insurance policy: a whole life policy from United of Omaha Life Insurance Company, with an unknown cash value.

It is * * *ordered * * * [that Kathleen] shall surrender 50% of the cash value of the aforementioned life insurance policy to [Kenneth] within [30] days from the journalization of this Order.

## SPOUSAL SUPPORT

The Court finds, upon considering the [following] factors * * * in [R.C.] 3105.18(C) that it is appropriate and reasonable for [Kathleen] to pay spousal support to [Kenneth]:

(a) The income of the parties * * *: [Kathleen] derives income from [two] retirement plans as well as social security for an approximate monthly amount of $4,000.00.  [Kenneth] is currently employed as a security officer at Playhouse Square and makes approximately $1,800.00 per month.

(b) The relative earning abilities of the parties: [Kathleen] is currently retired.  [Kenneth] is currently employed.

(c) The ages and physical, mental and emotional condition of the parties:  [Kathleen's] DOB is September 27, 1946 and she is [74] and [Kenneth's] DOB is March 23, 1955 and he is [65].  [Kathleen] testified she is in good physical health and has no mental or emotional conditions.  [Kenneth] testified he has arthritis and COPD and has no mental or emotional conditions.

* * *

(h) The relative extent of education of the parties:  [Kathleen] has an Associate's Degree and [Kenneth] graduated from high school and completed peace officer training.

* * *

{¶ 17} The court ordered Kathleen to pay Kenneth spousal support of $350 per month for 96 months beginning on November 1, 2021.

{¶ 18} It is from this order regarding division of property and spousal support that Kathleen appeals and assigns five errors for our review.

## II. Law and Analysis

### A. Standard of Review

{¶ 19} In *Feldman v. Feldman,* 8th Dist. Cuyahoga No. 92015, 2009-Ohio-4202, ¶ 11, this court held that

> [t]he Ohio Supreme Court has long recognized that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Thus, when reviewing a trial court's determination in a domestic relations case, an appellate court generally applies an abuse of discretion standard.

{¶ 20} "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). In *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), the Ohio Supreme Court held that "[a]lthough *Adams* dealt with 'abuse of discretion' in a criminal law context, * * * the term has the same meaning when applied in a domestic relations context."

### B. Civ.R. 75(M) Requirement

{¶ 21} In her first assignment of error, Kathleen argues that "the testimony that was provided by [Kenneth] relative to his financial situation, including his

income and its sources was not corroborated by any party, in any way." Specifically, Kathleen argues as follows:

> [H]e acknowledged that he had owned a 401(K) through Fidelity * * * although there was no way to corroborate any of his testimony since he had ignored his obligations under both 3105.171(E)(3) and Local Rule 14 and failed to corroborate any of his testimony pursuant to Civ.R. 75 (M).

> [S]ince there was no corroboration of the testimony presented by [Kenneth] that supported his testimony relative to the actual date of the marriage, the residency in Cuyahoga County or the State of Ohio prior to the date of the actual filing of the complaint or [Kathleen's] pregnancy the Court should not have granted the divorce since, pursuant to Civ.R. 75 (M), such testimony was not "[s]upported by other credible evidence."

> [N]one of the testimony relative to ownership of property, the parties' financial situation, including what, if any payments [Kenneth] actually made towards the mortgage obligation or the value of [Kenneth's] investment with Fidelity was corroborated.

{¶ 22} Pursuant to Civ.R. 75(M), a "[j]udgment for divorce * * * shall not be granted upon the testimony or admission of a party not supported by other credible evidence." Civ.R. 75(M) appears to apply to the allegations and grounds for granting or denying a divorce, rather than to the allocation of assets and liabilities within the divorce. *See Geiger v. Geiger*, 80 Ohio App. 161, 168-169, 72 N.E.2d 766 (2d Dist.1947) ("as a matter of law a divorce cannot be granted solely on the admissions of a party, unsupported by other evidence. The corroborative evidence must be of sufficient weight and have such probative value as to convince the court of the truth of the admissions, and, together with such admissions prove the grounds for divorce alleged in the petition by a preponderance of the evidence").

{¶ 23} In the case at hand, Kathleen filled out and filed a preprinted form captioned "Complaint for Divorce." Under item No. 4, which states "Plaintiff seeks a divorce on the following grounds(s)," Kathleen checked two boxes: "Plaintiff and Defendant are incompatible" and "Defendant has been guilty of the following." Plaintiff did not check any of the eight boxes listing items of which Kenneth "has been guilty."

{¶ 24} Our review of the limited testimony presented in the transcript reveals that Kathleen and Kenneth were incompatible, which, according to the complaint, is the ground upon which Kathleen sought the divorce. This finding is supported by testimony from all the witnesses: Kathleen, Kenneth, Ware, and Hubbard. Because Civ.R. 75(M) relates to the alleged grounds for the divorce, and because the parties' incompatibility is supported by all the evidence in the record, we cannot say that the court abused its discretion by granting Kathleen's petition for divorce. *See Gebi v. Worku*, 10th Dist. Franklin No. 17AP-75, 2017-Ohio-8462, ¶ 13, 27 ("We review a trial court's decision regarding grounds for divorce under an abuse of discretion standard. * * * Once one establishes grounds for divorce, the granting of a divorce is appropriate.").

{¶ 25} Accordingly, her first assignment of error is overruled.

**C. Disclosure Requirement**

{¶ 26} Under her second assignment of error, Kathleen argues that "in spite of the clear mandate of Local Rule 14 and R.C. 3105.171(E)(3) [Kenneth] was permitted to avoid compliance with the mandatory disclosure requirements which,

quite obviously, placed [Kathleen] at a distinct disadvantage and constituted an abuse of discretion."

{¶ 27} R.C. 3105.171(E)(3) states that the "court shall require each spouse to disclose in a full and complete manner all marital property, separate property, and other assets, debts, income, and expenses of the spouse."

{¶ 28} Loc.R. 14 of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division, states that each party to a divorce action

shall disclose to the other all of the following:

1. All real estate deeds;

2. All vehicle titles;

3. Most recent statements regarding pensions, profit sharing plans, retirement benefits and IRA's including the most recent summary plan description;

4. All life insurance policies and most recent cash value statement;

5. Last three year's income tax returns;

6. Proof of year to date current income from all sources;

7. Health, dental and vision insurance coverage available along with all plan options and costs including the marginal costs for covering the minor children;

8. COBRA benefits to which either party may be entitled, including cost estimates;

9. Child care/day care expenses;

10. Most recent statements regarding all liabilities including, but not limited to mortgages, lines of credit, loans, and credit card accounts;

11. Financial Disclosure Statement completed pursuant to Local Rule 12;

12. Antenuptial/Prenuptial agreements;

13. Any court order involving the minor children or the marriage including administrative support orders.

{¶ 29} On May 29, 2019, the same day Kathleen filed her complaint for divorce, the court issued a standard mandatory disclosure order to both parties directing them to exchange documentation, mostly financial in nature, within 30 days of the filing of an answer.

{¶ 30} Kenneth filed his answer in this case on July 2, 2019. On March 23, 2020, the court issued a journal entry granting Kenneth's motion to compel discovery, although the docket does not reflect that this motion was filed, and the motion is not part of the record. This journal entry ordered Kathleen to produce various financial documents to Kenneth within 14 days of the date of the journal entry.

{¶ 31} Upon review of Kathleen's appellate brief, as well as the entire record from the domestic relations court, we conclude that Kathleen fails to identify any specific disclosure that Kenneth allegedly failed to make. We further find that, outside of the mandatory disclosure order from the court, there is no evidence in the record that Kathleen requested any documents from Kenneth. In her opening statement at the divorce trial, Kathleen said, "I have not received any documents from the defendant's attorney. * * * I submitted all of my documents on August 17th to the Court. And my request is for a summary judgment."

{¶ 32} The court asked if Kenneth's attorney wanted to respond to Kathleen's statement prior to giving his opening statement on behalf of Kenneth.

Counsel declined to respond to Kathleen's request for summary judgment, and the court stated to Kathleen, "Your request for summary judgment is denied."

{¶ 33} Our review of the record does not show that Kathleen "submitted" anything to the court on August 17.[1]  Furthermore, it does not appear that either party complied with the court's disclosure order.  Kathleen fails to establish that the court abused its discretion by "permitting" Kenneth to "avoid compliance" with disclosure requirements.  Her allegations are nothing more than mere speculation at this point.  By failing to specify potential missing documentation, Kathleen fails to show how this may have prejudiced her.  *See Hardesty v. Hardesty*, 11th Dist. Geauga Nos. 2004-G-2582 and 2005-G-2614, 2006-Ohio-5648, ¶ 27 (holding that the "trial court's failure to address assets of which it had no knowledge" was not an abuse of discretion.  "This court can only review the trial court's decision under the same restraints in which the trial court was placed.").

{¶ 34} Accordingly, her second assignment of error is overruled.

**D. Marital Property v. Separate Property**

{¶ 35} In Kathleen's third assignment of error, she argues that "the trial court erred and abused its discretion by failing to determine whether certain items of property were marital or separate."

{¶ 36} Pursuant to R.C. 3105.171(B), "[i]n divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property.  In either case, upon making such a determination, the court shall

---

[1] The record does not establish the year in which this occurred.

divide the marital and separate property equitably between the spouses, in accordance with this section."

{¶ 37} Kathleen's argument is based on an inaccurate assessment of the trial court's judgment. The domestic relations court determined, under the heading "Division of Property," which property was marital, and which was separate. Specifically, the court determined that the Evening Star property, both parties' retirement assets,[2] and Kathleen's life insurance policy were marital property.

{¶ 38} In *KeyBank Natl. Assoc. v. Guarnieri & Secrest, P.L.L.*, 7th Dist. Columbiana No. 07 CO 46, 2008-Ohio-6362, ¶ 27, the court overruled an assignment of error that was based on "a factually incorrect assertion." The appellant argued that the trial court erred by granting summary judgment on a breach of trust claim. *Id.* The appellate court determined that the trial court did not grant summary judgment on that claim. "[R]ather, it was dismissed for failing to state a claim upon which relief could be granted" pursuant to Civ.R. 12(B)(6). *Id.* The court held that "it is inappropriate for this court to make a ruling on whether or not [a] claim could survive summary judgment" when "[n]o ruling for summary judgment was rendered on [the] issue * * *." *Id.*

{¶ 39} Although the procedural posture of *Guarnieri* and the case at hand are different, we use this analogy to stand for the proposition that overruling an assignment of error is proper when the appellant bases his or her argument on an

---

[2] We address under assignment of error four whether all or a portion of Kathleen's retirement assets were properly designated as marital assets.

inaccurate assessment of trial court proceedings. Accordingly, Kathleen's third assignment of error is overruled.

## E. Retirement Assets Accumulated Prior to the Marriage

{¶ 40} Pursuant to R.C. 3105.171(A)(6)(a)(ii), "separate property" includes "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage * * *."

{¶ 41} In her fourth assignment of error, Kathleen argues that because "she started working for the Coast Guard in October of 1967," the "non-marital portion of [her] Coast Guard retirement should not be subject to any type of division as a marital asset * * *."

{¶ 42} Kenneth concedes this assignment of error, which is sustained. Specifically, Kenneth concedes the following:

> The trial court found the duration of the marriage to be from May 29, 1999, until October 14, 2020. To the extent that the coast guard pension was acquired before May 29, 1999, Kenneth concedes that it should not be divided. The only portion of the coast guard pension that ought to be divided is the portion that was acquired during the marriage.

{¶ 43} In the case at hand, there is evidence in the record that Kathleen started working for the Coast Guard in 1967, the parties married in 1999, and Kathleen retired in 2014. Therefore, this case is remanded to the domestic relations court for modification of the division of property, which currently states that all of Kathleen's retirement benefits are marital assets, to reflect the aforementioned concession.

### F. Financial Misconduct

{¶ 44} In her fifth and final assignment of error, Kathleen argues that "in ignoring [Kenneth's] admitted financial misconduct and dissipation of marital assets the trial Court committed an abuse of discretion in awarding spousal support." Specifically, Kathleen argues that the following four actions constitute "financial misconduct" by Kenneth:

Failure to contribute to the household mortgage in spite of his presence in the home.

Dissipation of marital assets including some $60,000.00 from his PERS retirement account and approximately $34,000.00 from the proceeds from a lawsuit.

Payment of his personal debts while leaving to [Kathleen] the responsibility to address down payment and household mortgage.

Walking away from his employment and leaving the household expenses to [Kathleen].

{¶ 45} Pursuant to R.C. 3105.171(E)(4), "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." Furthermore, under R.C. 3105.18(C)(1)(n), the court, when determining the amount of spousal support, "shall consider * * * [a]ny * * * factor that the court expressly finds to be relevant and equitable."

{¶ 46} At trial in the case at hand, Kathleen testified that, during their marriage, Kenneth withdrew and spent all of his retirement, was evicted from at least one rental property for nonpayment of rent even though Kathleen paid half of

his rent, and purchased a house that "went into foreclosure." Kenneth corroborated Kathleen's testimony that he withdrew his retirement and spent it all, which amounted to "around $60,000."

{¶ 47} "The burden of proving financial misconduct is on the complaining spouse. Financial misconduct implies some type of wrongdoing in that the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Bostick v. Bostick*, 8th Dist. Cuyahoga No. 90711, 2008-Ohio-5119, ¶ 23.

{¶ 48} In *Haynes v. Haynes*, 8th Dist. Cuyahoga No. 92224, 2009-Ohio-5360, this court found that the domestic relations court abused its discretion by finding financial misconduct by both parties but not modifying the distributive award accordingly. Specifically, the husband in *Haynes* "acknowledged incurring a great deal of debt during the marriage without [the wife's] knowledge." *Id.* at ¶ 38. The parties refinanced one of their properties during their marriage to pay off the husband's $56,899.78 credit card debt. *Id.* Furthermore, the wife in *Haynes* spent more than $125,000 gambling at casinos during the marriage. *Id.* at ¶ 37. The magistrate found that the husband "should be compensated with a distributive award of marital property in the amount of $25,000." *Id.* at ¶ 39. The trial court "disregarded the magistrate's recommendation and chose to make no distributive award." *Id.* at ¶ 41. This court found that the domestic relations court abused its discretion and reversed and remanded "the matter to the trial court with respect to the division of marital assets." *Id.* at ¶ 49.

**{¶ 49}** Following *Haynes*, we find that the domestic relations court abused its discretion by failing to find financial misconduct and failing to account for this misconduct in the division of property or spousal support. It is undisputed that Kenneth dissipated his retirement in the amount of approximately $60,000. Under Ohio law, some of this retirement money was marital property of which Kathleen was entitled to half. Additionally, it is unclear from the record how much money — if any — Kathleen is entitled to as compensation for Kenneth's financial misconduct regarding eviction from and foreclosure of real property, which should be reflected in the distributive award of marital property or an adjustment in the amount of spousal support.

**{¶ 50}** Accordingly, Kathleen's fifth assignment of error is sustained.

## III. Conclusion

**{¶ 51}** Judgment affirmed in part and reversed and remanded in part. The division of property and spousal support awards are affirmed as noted in assignments of error Nos. 1, 2, and 3. The division of property and spousal support awards are reversed as noted in assignments of error Nos. 4 and 5. This case is remanded to the domestic relations court for modification of the division of property and spousal support to take into consideration Kathleen's retirement account from 1999-2014 as noted in assignment of error No. 4 and Kenneth's financial misconduct as noted in assignment of error No. 5.

**{¶ 52}** Affirmed in part, reversed in part, and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

MARY J. BOYLE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR