OPINION *Page 2 
{¶ 1} Defendant-appellant Ronald Stringfield appeals the Monroe County Common Pleas Court's valuation of his separate property in the divorce decree dividing assets between Mr. Stringfield and plaintiff-appellee Joetta Stringfield [now returned to Joetta Isaly]. The issue on appeal is whether the trial court abused its discretion in only crediting Mr. Stringfield with $900, which represents the amount Ms. Isaly purportedly received when she improperly sold his separate property. For the following reasons, the judgment of the trial court is reversed and remanded for findings regarding the fair market value of Mr. Stringfield's misappropriated separate property.
 STATEMENT OF THE CASE {¶ 2} The parties were married in December 2001. Ms. Isaly entered the marriage owning a house. Mr. Stringfield entered the marriage with a collection of NASCAR memorabilia, including die cast cars. Mr. Stringfield moved out in October 2004, and Ms. Isaly filed for divorce in December 2004.
 {¶ 3} The trial court originally filed a default entry against Mr. Stringfield on April 15, 2005. The court ordered Mr. Stringfield to pay Ms. Isaly $6,000 for his share of a loan she incurred on her house in order to cover marital debts. The court also stated that the parties previously divided personal property and that each party was awarded all items currently in their possession.
 {¶ 4} On May 16, 2005, Mr. Stringfield filed a motion for relief from judgment. Although he no longer lived with Ms. Isaly, she served the complaint on him at her address, and he received no notice of the divorce trial. The trial court granted the requested relief and vacated its judgment on May 20, 2005.
 {¶ 5} The divorce trial took place on September 9, 2005. Mr. Stringfield agreed to pay $6,000 for his share of the debt but asked that Ms. Isaly be required to compensate him for her improper sale of his die cast NASCAR car collection. (Tr. 64). The extent and value of the collection was disputed.
 {¶ 6} Ms. Isaly testified that two weeks after the first divorce decree, she made a list describing five cars found in the house and twenty-six cars found in a box in the garage, mostly Dale Earnhardt items. (Tr. 24-25). She knew these cars were Mr. Stringfield's prior to marriage. (Tr. 34). She said her son gave the list to a customer *Page 3 
he met at his job at Wal-Mart who was shopping for NASCAR cars. (Tr. 26-27). Ms. Isaly testified that this customer paid her between $800 and $900 for the thirty-one cars. (Her attorney used $900 as the proper figure). (Tr. 28). Ms. Isaly stated that she did not remember the buyer's last name or have any documentation of the sale. (Tr. 37). She admitted she had no idea of the value of the collection, except for her viewing a list on e-bay which allegedly showed the value of the cars to be between $25 and $30 each. (Tr. 27, 36).
 {¶ 7} Mr. Stringfield countered that when he returned to the house in December 2004, no one answered the door and his box of cars was no longer in the garage. (Tr. 66, 84). He presented an archived list sent to him by his supplier, Action Performance RCCAA, which contained ninety-four cars he purchased from them over the years with a short description and purchase price. (Tr. 71, 74). He also submitted a list he created with the current value of the cars in the open market. (Tr. 52).
 {¶ 8} Mr. Stringfield estimated the total value of his ninety-four Action Performance RCCAA cars at $13,000. (Tr. 57). He based this estimate on the list provided to him from his supplier showing his purchase prices combined with a price guide in Die Cast Digest showing the market value of the various cars. (Tr. 54-55). With regards to most of the cars, his estimated current market value was more than the purchase price due to a strong market for the deceased Dale Earnhardt's memorabilia. He also stated that he verified the book value with three different dealers. (Tr. 62).
 {¶ 9} On September 12, 2005, the trial court filed its judgment entry and divorce decree. Mr. Stringfield was ordered to pay Ms. Isaly for his share of the marital debt in the amount of $5,463.45. In a footnote, the court disclosed that the figure had been reduced by $900 due to Ms. Isaly improperly selling Mr. Stringfield's property. Mr. Stringfield filed timely notice of appeal.
 ASSIGNMENT OF ERROR {¶ 10} Mr. Stringfield's sole assignment of error provides:
 {¶ 11} "THE TRIAL COURT COMMITTED AN ABUSE OF DISCRETION BY FAILING TO AWARD DEFENDANT-APPELLANT THE REASONABLE VALUE OF HIS SEPARATE PROPERTY OWNED PRIOR TO THE MARRIAGE." *Page 4 
 {¶ 12} Mr. Stringfield contends that he proved the value of his collection was $13,000. He notes that Ms. Isaly was personally unaware of the collection's value and failed to obtain an actual appraisal. He complains that Ms. Isaly's failure was unreasonable. He concludes that the court's decision to credit him only with what Ms. Isaly ended up receiving was unreasonable.
 {¶ 13} In divorce proceedings, the court shall determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Separate property includes any personal property or interest therein that was acquired by one spouse prior to the date of the marriage and the passive appreciation acquired from separate property by one spouse during the marriage. R.C.3105.171(A)(6)(ii)-(iii).
 {¶ 14} The court shall distribute a spouse's separate property to that spouse unless an exception exists under division (E) or some other provision of the statute. R.C. 3105.171(D). For instance, the court may make a distributive award of separate property to facilitate the division of marital property or where a division of marital property would be impractical. R.C. 3105.171(E)(1)-(2). Furthermore, division (E) provides that if a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property. R.C. 3105.171(E)(3).
 {¶ 15} If the court does not distribute a spouse's separate property to that spouse, the court shall make written findings of fact that explain the factors considered. R.C. 3105.171(D). See, also, R.C.3105.171(G) (written findings of fact required supporting equitable division of marital property). The factors for dividing marital property or making a distributive award of separate property are contained in R.C. 3105.171(F)(1)-(9) and deal mostly with the equities of a division.
 {¶ 16} Here, Mr. Stringfield's collection was indisputably separate property. However, the court could not distribute that collection to Mr. Stringfield because Ms. Isaly sold it. The court agreed that she improperly sold the collection. The issue is the value of that collection.
 {¶ 17} We review the trial court's determination on matters of property division and valuation for abuse of discretion. See Koegel v.Koegel (1982), *Page 5 69 Ohio St.2d 355, 357 (noting that discretion in dividing property is not unlimited). See, also, Orwick v. Orwick, 7th Dist. No. 04JE14, 2005-Ohio-5055, ¶ 26
(reviewing trial court's decision on dissipation of assets for abuse of discretion). Thus, we must determine if the trial court's valuation decision was unreasonable, unconscionable or arbitrary. SeeBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 18} In general, courts utilize "the fair market value" in evaluating the worth of personal property which was improperly sold or destroyed in a divorce action. Horning v. Horning (Oct. 8, 1999), 11th Dist. No. 98-P-0082 (where husband urinated, burned holes in and poured ashes in pockets of wife's clothes); Trader v. Trader (Nov. 7, 1989), 2d Dist. No. 89CA9 (fair market rather than replacement cost, but allowing increase for utility of clothes husband burned where market value was minimal). The burden to establish the fair market value is generally on the one attributing value to the item. Id. The fair market value is the price which would be agreed upon in a voluntary sale between a willing seller and a willing buyer, who are both fully aware and informed of all circumstances involving the value of the items. See, e.g., Masheter v.Kebe (1976), 49 Ohio St.2d 148, 151.
 {¶ 19} Mr. Stringfield claims he had ninety-four cars worth $13,000. Although Mr. Stringfield's testimony that he kept $13,000 worth of collector cars in a garage with no door seems to lack credibility, Ms. Isaly did confirm that she discovered at least twenty-six cars in that garage, for which she admittedly received almost $30 a piece.
 {¶ 20} In making its credibility determinations, the trial court could find Ms. Isaly's testimony reasonable that she only found and sold thirty-one cars. As always, the credibility of the witnesses is afforded great deference in such matters. Goswami v. Goswami,152 Ohio App.3d 151, 2003-Ohio-803, ¶ 19, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80. The trial court could also find her testimony that she only received approximately $900 for those cars to be credible. See id.
 {¶ 21} However, the mere fact that Ms. Isaly received $900 does not establish fair market value. Ms. Isaly testified that she arrived at estimates for each car by viewing a list on e-bay, an auction site, which somehow established a value of between $25 and $30 per car. The cars were not hers, and she conceded that she *Page 6 
had no first-hand or second-hand knowledge of the values before attempting her e-bay research.
 {¶ 22} On the other hand, Mr. Stringfield testified that Ms. Isaly was taken "for a ride" if all she received was $25 to $30 per car. He was the owner of the collection. An owner of property, by virtue of ownership, is competent to testify as to the market value of that property. Smith v. Padgett (1987), 32 Ohio St.3d 344, 347-48. He offered a list of his purchases from a certain company with the purchase prices. He testified that the items were now worth more than he paid. He provided a list with what he believed to be the current fair market values of each item. He supported that list with a copy of Die Cast Digest and its included price guide.
 {¶ 23} Mr. Stringfield points out that Ms. Isaly seemed to be aware that different cars fetch different prices depending on their years and models because her own list specifies brand, year, model, sponsors, driver, number of items made and the scale of the replica among other things. From the descriptions provided on Ms. Isaly's list, Mr. Stringfield concludes that it is clear that many of the items were worth much more than $30 each when compared to his purchase price and with the estimated worth provided in the digest. For instance, there are many items on Ms. Isaly's list that Mr. Stringfield purchased for $75, $100 and $150. He states his testimony and the digest establish that they are worth the same or even more now even if some boxes were damaged.
 {¶ 24} The trial court is not bound by any appraisal or valuation methodology. Goswami at ¶ 19. However, the court must evaluate all evidence presented and explain its decision on valuing the misappropriated separate property in a manner so as to allow this court to conduct our review.
 {¶ 25} By way of example, in Horning, the trial court only awarded the wife $100 for dry cleaning and replacement of clothes that the husband had urinated on, burnt holes in and stuffed with ashes. The Eleventh District reversed and remanded finding that where the trial court awards such a low value under the circumstances, the court must explain its decision in sufficient detail to allow appellate review.Horning, citing Kaechele v. Kaechele (1988), 35 Ohio St.3d 93. Moreover, the relevant statute requires the court to support its division with findings. R.C. 3105.171(D) and (G). *Page 7 
 {¶ 26} Here, the court did not explain how it arrived at the value of the collection. In fact, all we have is a footnote stating that the judgment was reduced by $900 by reason of Ms. Isaly improperly selling Mr. Stringfield's property. The court did not mention valuation or fair market value. As such, we cannot be certain that the court considered the fair market value test of an informed and willing buyer and seller with knowledge of all relevant facts. Rather, the court may have awarded this amount merely because it was the amount received by Ms. Isaly without regards to fair market value. However, the price received does not in itself establish fair market value.
 {¶ 27} We agree with the Horning Court's holding that where the court awards what can be considered a low value under the circumstances of the case, the court must explain its decision in sufficient detail to allow appellate review of the court's rationale. Because such detail was missing from the judgment entry herein, the trial court's decision on the valuation of the misappropriated separate property is reversed and remanded for further proceedings. On remand, the court shall consider the testimony and evidence on record, make a decision on the fair market value of the misappropriated property and explain that decision in written findings in sufficient detail to allow this court's review.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1