OPINION *Page 2 
{¶ 1} Plaintiff-Appellant, Deborah L. Hardesty, appeals the judgment of the Allen County Court of Common Pleas, Domestic Relations Division, granting her complaint for divorce from Defendant-Appellee, Jeff A. Hardesty, and ordering that neither party pay spousal support. On appeal, Deborah asserts that the trial court erred as a matter of law and abused its discretion by not awarding her spousal support. Finding that the trial court did not abuse its discretion by not awarding either party spousal support, we affirm the judgment of the trial court.
 {¶ 2} The parties married in July 1987 and have no children born as issue to the marriage.
 {¶ 3} In July 2006, Deborah filed a complaint for divorce, in which she requested spousal support.
 {¶ 4} In August 2006, Jeff filed his answer to the complaint for divorce.
 {¶ 5} In February 2007, Deborah moved for temporary spousal support or, in the alternative, that the trial court order Jeff to pay the monthly payment on the parties' Chevy Tahoe vehicle.
 {¶ 6} In March 2007, the trial court ordered Jeff to make the monthly payments on the Chevy Tahoe. Additionally, the trial court held a final divorce hearing, during which the parties agreed on all aspects of the divorce, except for *Page 3 
the issue of spousal support. Regarding the spousal support issue, the following evidence was presented.
 {¶ 7} Deborah testified that she is fifty-two years old; that she is employed on the assembly line at International Brake; that she works forty hours per week and works overtime during the winter months; that Jeff is self-employed and runs his business, Hardesty Enterprises, as a joint partner with her brother; that Jeff told the bank that his business earned $280,000 in 2005 and $380,000 in 2006, but she did not know whether that was the gross or net amount; that she never knew his business made that much money; that, during the marriage, they frequently took weekend trips during the summer months, ate in a "sit-down" restaurant two to three times a week, took a week-long trip to Las Vegas four years ago, and took a week-long trip to Florida five years ago; that she used her paycheck for groceries, Christmas and birthday gifts, clothing, her personal credit cards, and miscellaneous items; that Jeff paid the house payment, the utilities, the joint credit cards, her daughter from a previous relationship's house payment for seven months, and helped pay her daughter's student loan; that she and Jeff got together when her daughter was two years old; that her daughter and Jeff had a father-daughter relationship; and, that her daughter is currently living with Jeff and paying him $300 per month in rent. *Page 4 
 {¶ 8} Deborah continued that she has asthma and sometimes has to stay home from work on days when it is humid during the summer; that she has temporary paralysis in her right hand, for which she had surgery, but she is still able to work; that Jeff gave her herpes; that she has no opportunity to earn more money in her employment; that Jeff sold his industrial cleaning business, A A Contracting Services, in 2001, for which she received a $60,000 balloon payment in 2006; that, when Jeff sold the business, he had to sign a five-year noncompetition agreement; that, after the five-year noncompetition period, Jeff will go back into the industrial cleaning business and will enhance his earning ability; that Jeff's gross income before he sold the business was $148,000; and, that, while Jeff said he only makes $25,000 a year, he has to make more because they could not live the lifestyle they did and pay the debts they had on that amount of income. Additionally, Deborah submitted a copy of Jeffs Personal Financial Statement for Sky Bank into evidence, in which he indicated that his 2006 earnings would be $100,000.
 {¶ 9} On cross-examination, Deborah admitted that they began traveling after Jeff sold his business and was receiving a $2000 monthly payment as part of the sale agreement; that, while Jeff controlled the money he received from the sale of his business, she shared in the proceeds through traveling and enjoyment of new motorcycles purchased with the money; that she received one of the motorcycles *Page 5 
free and clear of any encumbrances as part of the divorce; that she worked at Sieman's until it closed in 2003; that, when Sieman's closed, it offered to pay a certain amount of money toward education as part of the severance package; that she did not use any of the available money and, instead, stayed at home and drew unemployment; that she did take some phlebotomy courses, for which Jeff paid; and, that she made $19,000 in 2006, excluding the $60,000 balloon payment from the sale of Jeff s business. Additionally, Jeff's counsel submitted the parties' joint tax returns for the years 2002 to 2005.
 {¶ 10} On redirect examination, Deborah testified that she did not believe the joint income tax return figures accurately portrayed Jeffs income because he determined his paycheck amounts in order to remain in a certain tax bracket and retained the additional assets in his business.[1]
 {¶ 11} Jeff testified that he is forty-two years old and in good health; that he and Deborah were able to take trips after he sold his business in August of 2001; that he received unemployment compensation in 2001; that he began receiving the $2,000 monthly payments from the sale of the business in September 2001; that he continued receiving monthly payments until September 2006, at which time he received a final balloon payment of $120,000; that he split the final balloon *Page 6 
payment equally with Deborah; that the $24,000 he received annually from the sale of his business was reflected in the parties' joint income tax returns for 2002 through 2005; that anything he made beyond the $24,000 came from Hardesty Enterprises; that he anticipated his 2006 net income to be between $15,000 and $18,000; that he anticipated his 2007 net income to be between $25,000 and $30,000; that Deborah's daughter moved in with him after Deborah filed for divorce because he could no longer afford to help her with her house payments; and, that Deborah's daughter was supposed to pay him rent, but had only given him $100 thus far.
 {¶ 12} Jeff continued that he was not surprised that an evaluation of his business revealed that his business was not worth anything; that Hardesty Enterprises did earn $380,000 in 2006, but that was the gross amount; that he and his partner had five people on the payroll, most of their equipment was encumbered, and they occasionally had to pay subcontractors; that he used credit cards to pay for some of the parties' marital expenses; that he gave a conservative estimate of his 2006 income as $100,000 on the Sky Financial statement in August 2006 because he was anticipating the $120,000 balloon payment in September 2006; that, when he completed the Sky Financial statement, he did not yet know that he would be splitting the balloon payment with Deborah as part of the *Page 7 
divorce; that he completed the Sky Financial statement for a continuing operating line of credit for Hardesty Enterprises; and, that he and Deborah did not save much money and basically spent everything they made.
 {¶ 13} On cross-examination, Jeff testified that he was not going back to the industrial cleaning business because it was too stressful and that his partner drew regular paychecks from the business, but he did not because he was able to take less when he was receiving the monthly payments from the sale of his business.
 {¶ 14} At the close of the hearing, the trial court stated that it had considered the testimony, exhibits, and the factors under R.C. 3105.18
in finding as follows:
 [Jeff's] income currently is less than that of [Deborah's] um, through place of employment. Um, this is supported by the tax returns that we have before us at this time. Basically uh, the income . . . all of the incomes reflective of the payments received from the business that sold and also the fact that uh, he has the option, if you will, to go back into his own business is not something that I can really take into consideration at this time. I don't find that he has voluntarily uh, placed himself in the situation to uh, earn less income. Uh, merely because he has not gone back to a business that he had five years ago, uh, that was. . he. .he sold that business during the marriage, the parties enjoyed the fruit of that business. Uh, substantially before the divorce complaint was filed, so it was not done in contemplation of the divorce proceedings. Uh, based upon the same * * * the Court must find that it is neither reasonable nor appropriate to award spousal support at this time. *Page 8 
(Hearing Tr., pp. 91-92). Thereafter, the trial court issued its judgment entry decree of divorce, in which it provided that "neither party shall pay spousal support to the other." (Mar. 2007 Divorce Decree, p. 4).
 {¶ 15} It is from this judgment that Deborah appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION IN NOT AWARDING PLAINTIFF/APPELLANT SPOUSAL SUPPORT WHERE DEFENDANT/APPELLEE'S EARNING POTENTIAL FAR EXCEEDED PLAINTIFF/APPELLANT'S AND THE MARRIAGE WAS OF LONG DURATION.
 {¶ 16} In her sole assignment of error, Deborah asserts that the trial court erred and abused its discretion by not awarding her spousal support given Jeff's earning potential far exceeds hers and the marriage was of long duration. We disagree.
 {¶ 17} "`As part of a divorce proceeding, a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate.'"Heitzman v. Heitzman, 3d Dist. No. 3-05-11, 2005-Ohio-4622, at ¶ 3, quoting Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67; R.C. 3105.18(B) (authorizing trial court to award reasonable spousal support following division of property). Accordingly, a trial court's order granting or denying spousal support will not be reversed on appeal absent an abuse of discretion. Crawford v. Crawford, 3d Dist. No. 14-06-42,2007-Ohio-3139, *Page 9 
citing Bowen v. Bowen (1999), 132 Ohio App.3d 616, 626. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. In applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 18} In determining whether spousal support is appropriate and necessary, and in determining the nature, amount, terms of payment, and duration of spousal support, trial courts must consider all of the factors listed in R.C. 3105.18(C)(1). Lee v. Lee, 3d Dist. No. 17-01-05, 2001-Ohio-2245; R.C. 3105.18(C)(1). The requisite factors are as follows:
 a) The income of the parties, from all sources * * *;
 b) The relative earning abilities of the parties;
 c) The ages and the physical, mental, and emotional conditions of the parties;
 d) The retirement benefits of the parties;
 e) The duration of the marriage;
 f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
 g) The standard of living of the parties established during the marriage;
 h) The relative extent of education of the parties; i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; *Page 10 
 k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
 l) The tax consequences, for each party, of an award of spousal support;
 m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
 n) Any other factor that the court expressly finds to be relevant and equitable.
R.C. 3105.18(C)(1).
 {¶ 19} In general, where a payee spouse "has the resources, ability and potential to be self-supporting," the trial court "should provide for the termination of the award, within a reasonable time and upon a date certain" in order to disentangle the parties. Kunkle,51 Ohio St.3d at 69. However, trial courts may deviate from this rule "in cases involving a marriage of long duration, parties of advanced age or a homemaker-spouse with little opportunity to develop meaningful employment outside the home." Id.; see, also, Bowen,132 Ohio App.3d at 626.
 {¶ 20} Here, Deborah argues that the trial court abused its discretion by not awarding her spousal support because Jeff's earning potential far exceeds hers and because the marriage was of long duration. Upon reviewing the record, we cannot find that the trial court abused its discretion in failing to award Deborah spousal support. There was testimony that, while Jeff's business grossed $380,000 in *Page 11 
2006, his business was not worth much because of its substantial debt, its payroll, and its use of subcontractors and that Jeff did not draw much income from the business during the five years he received payments from the sale of his prior business so that his partner could draw a higher paycheck; that his net income for 2006 would only be between $15,000 and $18,000; and, that his net income for 2007 would be $25,000 or $30,000. Although Deborah's net income for 2006 was around $19,000, Jeffs estimated net income of $15,000 to $18,000 was slightly less than hers.
 {¶ 21} Likewise, Jeffs estimated net income of $25,000 to $30,000 for 2007 is not so much higher than Deborah's as to render the trial court's judgment arbitrary or capricious, especially given the additional evidence that Jeff used credit cards to pay for some of the marital expenses; that Deborah benefitted from the monthly payments from the sale of Jeffs business in the form of recreation and travel and also received a balloon payment of $60,000; that Jeff and Deborah spent everything they made; that Deborah chose to forego schooling or training, which would have been partially funded by Sieman's; that Jeff paid for her phlebotomy courses; and, that Jeff continues to financially support Deborah's daughter. Although the trial court could have ordered Jeff to pay Deborah spousal support given the nineteen-year duration of their marriage, the trial court was not *Page 12 
required to do so. Thus, based on these facts, we find that the trial court did not abuse its discretion by not awarding either party spousal support.
 {¶ 22} Accordingly, we overrule Deborah's assignment of error.
 {¶ 23} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur. r
[1] Jeff's income from 2002 through 2005, as reflected on the parties' joint income tax returns, was as follows: 2002 — $15,044 from unemployment compensation and $24,000 from the sale payments; 2003-$8,500 from Hardesty Enterprises and $24,000 from the sale payments; 2004 — $11,190 from Hardesty Enterprises and $24,000 from the sale payments; 2005 — $8,000 from Hardesty Enterprises and $24,000 from the sale payments. See Plaintiff's Exh. 2-5. *Page 1