[Cite as *Link v. Link*, 2012-Ohio-4654.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

DAVID LINK,

    PLAINTIFF-APPELLEE,            CASE NO. 10-11-21

      v.

ANN E. LINK,                    **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Domestic Relations Division
Trial Court No. 09-DIV-031

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision: October 9, 2012**

APPEARANCES:

    *James R. Kinglsey* **for Appellant**

    *Thomas E. Luth* **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Ann Link, appeals the judgment of the Court of Common Pleas of Mercer County, Domestic Relations Division, granting a divorce decree to Plaintiff-Appellee, David Link. On appeal, Ann argues that the trial court committed the following errors: failing to grant a distributive award for David's alleged misconduct during the pendency of the divorce, failing to allocate all of the marital assets, improperly dividing the martial assets, failing to order David to pay arrearages on temporary spousal support, inappropriately allocating marital debts among the parties, and denying spousal support payments to Ann. Based on the following, we affirm in part, and reverse in part, the trial court's judgment.

{¶2} David and Ann were married in 1979. Their three children reached majority age before the initiation of this matter. David is the chief financial officer and vice-president of a privately-owned manufacturing company. Meanwhile, Ann, a former hairdresser, has mostly served as a homemaker since the parties' marriage.

{¶3} In June 2009, David filed a complaint for divorce. On November 10, 2009, the trial court granted Ann's motion for spousal support *pendente lite*. It ordered that David pay Ann $300 bi-weekly and that Ann "is limited to charging $2,000 per month on credit cards for which [David] shall pay and be responsible

for said indebtedness." (Docket No. 31, p.1). The trial court further ordered that David "receive all rental income from the parties' rental properties and [that David] shall be responsible to pay all indebtedness, repairs, and maintenance on said properties." *Id.*

{¶4} On December 8, 2012, Ann moved to continue the final hearing, claiming that David was evasive in written discovery responses. Counsel attached some of David's discovery responses to the motion. The responses indicate that David provided the following documentation during discovery: tax returns, paystubs, statements from his retirement and health plans, receipts from the rental properties owned by David and Ann, a list of the couple's rental properties, a variety of utility, bank, and credit card statements, including those relating to the couple's equity line of credit, an itemized list of monthly expenses, a statement from his treating physician, and a report of his Social Security payments. Although there is no formal ruling in the record, Anne's motion was effectively denied since the final hearing proceeded as scheduled on December 14, 2009.

{¶5} Ann was dissatisfied with the number of credit card and bank statements provided by David, who claimed in his deposition that he does not keep such statements. As a result, she issued subpoenas instructing David's bank and credit card companies to produce the additional statements. These companies complied with the subpoenas and provided Ann with the statements she requested.

Despite her complaints of David's allegedly deficient document production, Ann did not file any motions to compel during the course of the divorce proceedings.

{¶6} The final hearing occurred on December 14, 2009 and March 2, 2010. The hearing produced differing testimony regarding David's payment of the court-ordered temporary spousal support. David testified that he provided the full temporary spousal support required by the trial court's order. Meanwhile, Ann admitted that she received the required $300 payment every two weeks. But, she testified that David directly paid on a credit account that had been closed before the support order was handed down. Consequently, David's payments did not affect the expenses that Ann incurred during the proceedings, but instead they paid down the debt owed on the closed account.

{¶7} David's testimony indicates that he did not know that his direct payments were on a closed credit account. Further, Ann admitted that she failed to disclose the credit account she used for her expenses during the course of discovery. Ann did file a motion for contempt on December 14, 2009, claiming that David had neither paid the required $300 biweekly payment nor the required $2,000 credit card payment. But, the motion was vague and did not include an allegation that David was paying on a closed account or that Ann was using a different credit card than the one previously disclosed in discovery.

{¶8} Testimony was also offered regarding the compensation and benefits David received through his employment. He stated that he had not received a bonus for 2009 and that he was not expecting one. When pressed by Ann's counsel to reveal financial information regarding his employer, David refused because his employer is a privately-held company that does not publicly disclose its revenues.

{¶9} Moreover, David testified that he had both a 401(k) and a health savings account as part of his compensation package. He said that upon the initiation of these proceedings, he stopped making voluntary contributions to the 401(k). When asked the reason for his decision, David responded as follows: "Why should I build an account up that I know is going to be split 50/50 and I only get 50? That's the reason I stopped contributing. Personal business decision." Hearing Tr., p. 138.

{¶10} The following evidence was adduced at the hearing regarding the collection of rent on the couple's rental properties. David admitted that he had not sought money judgments against delinquent tenants residing in the couple's rental properties. The basis for David's action, according to his testimony, was his business judgment that obtaining such a judgment would be costly and have a limited probability of success.

{¶11} Ann presented evidence that she collected over $10,000 in rent from June 2009 through November 2009. During this time period, the remaining rent of $19,565 was payable to David. It was his practice to sometimes only deposit a portion of the rental checks from tenants and use the remainder for either expenses related to the properties or for his personal use. The initiation of these proceedings and the trial court's order did not alter David's method of bookkeeping for the rental properties. David testified that he paid approximately $14,000 in real estate taxes and approximately $10,000 on loan interest and maintenance expenses for the rental properties during the course of the divorce proceedings.

{¶12} The hearing also revealed the following relevant evidence regarding support for the couple's adult children. David testified that he maintained a checking account in his name for the purpose of funding the education of the couple's youngest child, Dylan. The account identified Dylan as the beneficiary. David indicated that he was agreeable to naming another person as the trustee of the account, including Ann. Ann testified that she wanted to ensure that David provided for Dylan's education, but did not trust him with the use of this checking account. Additionally, David testified that the couple's son, Jeremy, was currently living in one of their rental properties without paying rent.

{¶13} David presented evidence regarding the appraisal value of jewelry that Ann possessed. The appraised value of the jewelry totaled $16,755 according to the jeweler who prepared the appraisal. He stated that this amount represented the fair market value of the items. But, on cross-examination, the jeweler admitted that typically, a jeweler will pay much less than market value for jewelry from an individual, sometimes as low as 50 percent of the fair market value. However, he testified that such information does not affect his appraisals because it is too speculative.

{¶14} There was a substantial amount of testimony regarding the couple's equity line of credit. Ann testified that David increased the balance on the equity line of credit to about $160,000 before their separation in May 2009. David testified that the equity line was used primarily to finance payments associated with the rental properties, larger household expenses, and other credit loans, such as car payments. He also admitted that the equity line was used to cover some of his personal entertainment expenses, including a gambling debt.

{¶15} Based on credit statements provided by David during discovery, Ann's counsel succinctly outlined David's use of the credit line over the course of 2008 and 2009 as follows:

> [I]n January, 2008, David took a draw of $1,000.00. In February, 2008, he took a draw of $5,000.00 and paid property taxes of $6,000.00, tax preparation of $1,000.00 and invested $10,000.00 [in a failed spa that he and Anne purchased]. In June, 2008 he took a

draw of $40,000. He purchased new furniture for $2,000.00, paid property taxes of $6,000.00, paid insurance of $6,000.00 and he purchased his Prius for $26,000.00. He had $6,000.00 in gambling losses. In August, 2008 he drew $50,000. He purchased [one of the couple's rental properties] applying $40,000 towards the purchase price. Pool repairs $1,000.00. City tax $1,000.00. His truck repair $1,000.00. Tyler's [their son's] college, $1,000.00. In January, 2009, he took a draw of $48,000.00 In February he drew $6,000 . . . . He spent $12,000.00 on Christmas. He put $19,000.00 into [a rental property]. He had personal entertainment of $7,000.00. He established Dylan's college fund in the amount of $10,000.00, tax preparation $1,000.00, city tax $2,000.00, Tyler['s] tuition $3,000.00, Dylan's surgery $4,000.00, property taxes $6,000.00. In May, 2009 he drew $20,000.00. Dylan['s] [c]ollege $10,000.00, Dylan['s] college bank account $2,000.00, insurance $6,000.00. He set up housekeeping $3,000.00, roof repair on [a rental property] $3,000.00. (Docket No. 72, p. 10).

{¶16} Ann presented evidence of the attorney fees she incurred during the course of the proceedings. The trial court admitted a statement from her counsel that showed over $19,000 in charges and only $5,000 in payments.

{¶17} The parties also provided evidence of a purported property settlement agreement between them. The agreement itself was one page, contained a variety of handwritten revisions, and only included a list of assets that were to be divided between Ann and David. It was admitted into evidence during the first day of the final hearing. At the end of the first day, the trial court heard testimony from both Ann and David that the agreement was voluntary and that they considered it fair. However, both Ann and David also stated that they believed the other party was failing to disclose assets and debts.

{¶18} On December 29, 2009, David moved to have the agreement set aside on the basis that it failed to include the jewelry possessed by Ann and that it did not represent a full agreement. During the second day of the hearing on March 2, 2010, David recanted his previous testimony and said that he believed the agreement was not fair. As a result, the trial court set aside the property agreement because there was no "inquiry of each party if they entered into the agreement, whether they did so voluntarily, whether they are satisfied with the terms, and if they wanted the court to approve, adopt, and incorporate their agreement." (Docket No. 75, p. 1).

{¶19} The magistrate handed down her decision on June 11, 2010. It included the following relevant orders. First, all of the couple's rental properties, except for the unit occupied by Jeremy, and their marital home were awarded to Ann. Second, Ann also received the jewelry that she already possessed. Third, Ann and David were awarded joint ownership of the rental property occupied by Jeremy. Fourth, Ann was ordered to pay $152,000 of the debt on the equity line of credit while David was ordered to pay $18,041 of the debt since she received more assets than David did.

{¶20} Fifth, Ann was not awarded attorney fees since there was no testimony that her fees were reasonable and necessary and there was no corroborating expert testimony by a local attorney. Sixth, Ann was not awarded

spousal support payments. The magistrate made specific findings of fact regarding each factor outlined in R.C. 3105.18(C)(1) for the appropriateness of spousal support. In sum, the magistrate's decision awarded $811,581 in assets to David and required him to pay $18,041 of the marital debts, for a net of $793,540. Meanwhile, the decision awarded $945,540 in assets to Ann and required her to pay $133,959 of the marital debts, for a net of $811,581.

{¶21} On September 30, 2010, Ann filed a variety of objections to the magistrate's decision. The trial court independently reviewed the evidence and overruled all of Ann's objections. As a result, the trial court granted a divorce decree on October 17, 2011 that included the terms of the magistrate's final order.

{¶22} Ann filed this timely appeal. Ann's counsel filed an original merit brief on January 17, 2012 that far exceeded the page limits allowed under Loc.R. 7. At the same time as this filing, counsel moved for leave to file a brief that exceeded 25 pages. On January 24, 2012, this court struck the original brief from the record due to its failure to comply with Loc.R. 7 and we granted leave for Ann's counsel to file an amended brief that did not exceed 30 pages.[1] Counsel filed an amended brief that complied with this court's order on February 2, 2012.

---

[1] Despite counsel's characterization of this page limitation as "arbitrary," we find that 30 pages were more than sufficient for counsel to make his arguments on Ann's behalf, especially in light of the 12-page length of David's merit brief.

{¶23} Ann's appeal presents the following assignments of error for our review.

*Assignment of Error No. I*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT REFUSED TO GRANT DEFENDANT A DISTRIBUTIVE AWARD/SANCTION FOR PLAINTIFF'S MISCONDUCT?**

*Assignment of Error No. II*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT FAILED TO ALLOCATE EACH AND EVERY ASSET OF VALUE?**

*Assignment of Error No. III*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN ITS DIVISION OF MARITAL ASSETS?**

*Assignment of Error No. IV*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT FAILED TO PRESERVE TEMPORARY ORDER ARREARAGES TO DEFENDANT?**

*Assignment of Error No. V*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR IN ITS DEBT ALLOCATION?**

*Assignment of Error No. VI*

**DID THE TRIAL COURT COMMIT PREJUDICIAL ERROR WHEN IT DENIED PERIODIC SUSTENANCE SUPPORT TO PLAINTIFF *[SIC]*?**

*Assignment of Error No. I*

**{¶24}** In her first assignment of error, Ann claims that the trial court should have handed down a distributive award due to David's alleged financial misconduct during the course of the divorce proceedings. Ann identifies the following purported instances of conduct that should have given rise to such a sanction: (1) David's failure to pay temporary spousal support to Ann; (2) his failure to provide potentially relevant financial records; (3) David's alleged failure to account for his use of the equity line of credit; (4) his use of $25,000 to open a bank account to benefit Dylan's college education; and (5) David's failure to produce additional marital assets in the form of collecting delinquent rents and funding his 401(k). After considering the evidence in the record, we disagree with Ann's contention.

**{¶25}** We preliminarily note that the divorce proceedings in this matter occurred on December 14, 2009 and March 2, 2010, before the effective date of House Bill 238 ("H.B. 238"), which amended R.C. 3105.171(E) to require that the parties fully disclose their assets and to authorize trial courts to hand down a variety of sanctions for a party's failure to comply. *See* R.C. 3105.171(E)(3), (5). Since the proceedings pre-date the enactment of H.B. 238, the new provisions of R.C. 3105.171(E) do not apply to this matter and the former version of the statute controls. *See Cornell v. Rudolph Foods, Inc.*, 3d Dist. No. 1-10-89, 2011-Ohio-

4322, fn. 3 (stating H.B. 238's amendments to R.C. 3105.171(I) did not apply where the divorce proceedings occurred before the statute's effective date).[2]

**{¶26}** We review a trial court's order regarding a distributive award under former R.C. 3105.171(E)(3) for abuse of discretion. *Bostick v. Bostick*, 8th Dist. No. 90711, 2008-Ohio-5119, ¶ 22. A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶ 17-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1985).

**{¶27}** The burden of proving financial misconduct is on the spouse raising the issue. *Bostick* at ¶ 23. "Financial misconduct implies some type of wrongdoing in that the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets." *Id.*

**{¶28}** Here, we grant deference to the trial court's judgment that a distributive award was inappropriate. In light of this deference, our review of the record discloses that the trial court's judgment was factually supported.

---

[2] We note that even if H.B. 238's provisions applied in this matter, the outcome would be the same. Ann alleges financial misconduct on David's part and cites to former R.C. 3105.171(E)(3). This provision is still effective after H.B. 238's enactment and is re-codified as R.C. 3105.171(E)(4).

{¶29} David testified repeatedly that he paid $2,000 per month to cover Ann's credit card and that he provided $300 to her every two weeks, as required by the trial court. The trial court never found that David's testimony was untrue or that he violated its order and there is no evidence in the record to suggest it. Further, Ann even admitted that these payments were made. Consequently, we decline to find that David failed to pay the temporary spousal support or that his conduct in this regard supports a financial sanction.

{¶30} Meanwhile, the record discloses that David provided Ann with a variety of financial documents, including multiple years of tax returns and receipts from the couple's rental properties. Although David did not possess, and consequently did not hand over, all of the bank and credit card statements that Ann requested, she was still able to obtain the requested statements via subpoena. Further, we note that Ann's counsel did not file any motions to compel for any of David's allegedly deficient document production. *See Wise v. Riddlebaugh*, 3d Dist. No. 9-97-6 (May 29, 1997) ("Appellants cannot complain about appellee[s'] failure to provide documents that appellants did not request.").

{¶31} Ann also complains that David improperly withheld information regarding his employer's financial health. David works for a privately-owned company that does not make its profits available for public consumption. Based on the company's nature, David was under no obligation to divulge information

regarding its finances. Again, we note that Ann's counsel could have filed a motion to compel or obtained a subpoena against David's employer to obtain this information. *Id*. Since David disclosed the requested records that were in his possession and he properly refrained from disclosing confidential information regarding his privately-held company, we do not find that David engaged in improper concealment of records giving rise to a distributive award.

{¶32} As to David's handling of the equity line of credit, the record reflects that he was forthright in disclosing his withdrawals and their use. David produced statements for the account during discovery. This production of documents was so thorough that Ann's counsel used an entire page in the post-trial brief to summarize seven months of David's withdrawals and spending on the account. As a result, Ann cannot now complain that David concealed how he used the equity line of credit and cannot obtain a financial sanction on this basis.

{¶33} David's action of opening an account to benefit the college education of the couple's son should not be denigrated as conduct giving rise to a financial sanction. At trial, David testified that while he opened the account in his name, he had no problem with making Ann the trustee of the account. Indeed, Ann desired that such provision be made for the child's education. Consequently, the opening of the account cannot, and should not, serve as grounds for a financial sanction against David.

{¶34} In regard to David's failure to collect delinquent rent, he stated that he affirmatively chose not to pursue such a strategy since it involved increased costs and a limited likelihood of success. Based on this testimony, there is no indication that David's action amounts to an attempt to conceal or defeat Ann's division of the marital assets. Rather, it constitutes a reasoned business judgment and it cannot support the issuance of a distributive award.

{¶35} David's failure to fund his 401(k) account and his admission that he did so to prevent Ann's recovery of additional assets presents a more difficult question. While such behavior suggests wrongdoing, this instance of conduct, standing alone, is insufficient to support a distributive award. Appellate courts review divisions of martial assets based on the totality of the circumstances, *see Briganti v. Briganti*, 9 Ohio St.3d 220, 222 (1984), and the courts have previously been willing to reject distributive awards even though one of the parties has engaged in some type of wrongdoing, *see Harris v. Harris*, 6th Dist. No. L-02-1369, 2004-Ohio-683, ¶ 21 (opinion of Lanzinger, J.). The trial court decided to weigh David's compliance with the court's orders, disclosure of financial records, and other conduct more heavily than his failure to provide voluntary contributions to his 401(k) after divorce proceedings commenced. No evidence in the record suggests that the trial court's judgment in this regard amounts to reversible error.

{¶36} Finally, we note that Ann's central argument in support of her original request for a distributive award was based on David's alleged lack of credibility regarding his assets and records keeping. This court has long deferred to trial courts' weighing of credibility and absent affirmative evidence in the record, we abstain from second guessing trial courts' conclusions on these issues. *See, e.g.*, *Thacker v. Thacker*, 3d Dist. No. 9-10-26, 2010-Ohio-5675, ¶ 33. Since Ann has failed to direct our attention to such evidence, we accept the trial court's conclusion that David's testimony was credible. Thus, we find that the record does not support the reversal of the trial court's order regarding the issuance of a distributive award.

{¶37} Accordingly, we overrule Ann's first assignment of error.

*Assignment of Error No. II*

{¶38} In her second assignment of error, Ann contends that the trial court's order is deficient since it failed to allocate certain purported marital assets, including rents collected after November 2009, David's 2009 salary bonus, and any outstanding tax refunds. We disagree.

*Rents*

{¶39} "A divorce decree that does not dispose of all property is insufficient and incomplete." (Citation omitted.) *Schiesswohl v. Schiesswohl*, 9th Dist. No. 21629, 2004-Ohio-1615, ¶ 41. A trial court's order that disposes of property is

reviewed on an abuse of discretion basis. *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). In *Schiesswohl*, the court reversed a trial court's divorce order that did not include a division of horses and horse equipment that the parties obtained during marriage. The court found that the order was reversible since the trial court did not hand down a division of these assets despite the parties' introduction of evidence regarding their value. *Schiesswohl* at ¶ 41-44.

{¶40} Here, any net rental income that David collected during the period from the trial court's order of November 10, 2009 until March 2, 2009, the second date of the final hearing, is subject to division. The record contains evidence of Ann's and David's collection of rents before the trial court's order of November 10, 2009. It further shows that David collected rent after the court order. But, the record is devoid of any evidence indicating the amount of rents actually collected by David or Ann after November 2009. However, there is evidence in the record that David made a $7,000 real estate tax payment in February 2010 on the rental properties and that Ann made no payments to maintain the properties.

{¶41} The magistrate's decision granted Ann the rental properties, but it did not state how the rents received after November 2009 were to be distributed. In denying Ann's objection to the magistrate's decision, the trial court stated the following:

> [T]he evidence at the final hearing as contained in the transcript of
> the testimony of each of the parties was that the rental payments

received were expended by the parties to pay their various obligations, including those associated with those rental properties. Therefore, the evidence establishes that there existed no rents received as an asset that was in addition to the assets found by the magistrate. (Docket No. 93, p. 3).

**{¶42}** Due to the dearth of evidence in the record regarding the parties' collection of rent after November 2009, it is difficult to assess the merits of the trial court's order. But, David's testimony that he primarily used rental payments to pay various maintenance expenses does provide a factual basis for the order. Further, unlike in *Schiesswohl*, Ann did not present clear evidence to demonstrate the value of the net rental income received by David. Thus, we are unable to find that the trial court abused its discretion in not distributing the rents.

*David's Bonus and Tax Refunds*

**{¶43}** Unless the trial court finds otherwise, the date of the final hearing is presumed the termination date of the marriage. *See* R.C. 3105.171(A)(2); *Eggeman v. Eggeman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶ 7. Consequently, any assets acquired after the date of the final hearing and not brought to the trial court's attention cannot be distributed by the trial court. *See Jagusch v. Jagusch*, 9th Dist. No. 02CA0036-M, 2003-Ohio-243, ¶ 11 (finding that since no evidence showed the existence of a bonus, the trial court could not hand down an order dividing such a bonus). Here, the final hearing occurred on December 14, 2009 and March 2, 2010. Ann failed to present any evidence of a bonus or a tax refund

actually accruing to David on or before either hearing date. Thus, we are unable to find that it was erroneous for the trial court to refrain from including these speculative items in its division of the marital assets.

{¶44} Accordingly, we overrule Ann's second assignment of error.

*Assignment of Error Nos. III & V*

{¶45} Based on the nature of the third and fifth assignments of error, we elect to address them together. Essentially, Ann maintains that the trial court handed down an improper division of the marital assets and debts. Specifically, she states that the division of the assets was erroneous because the trial court's judgment includes the following deficiencies: (1) it did not incorporate a purported partial settlement agreement among the parties; (2) it did not treat Ann's jewelry as separate property; (3) it overvalued Ann's jewelry; (4) it left one of the couple's rental properties to both Ann and David as tenants in common; (5) it ordered the maintenance of a $25,000 college fund to benefit Dylan; (6) it failed to distribute David's health savings account benefits equitably; (7) it failed to reimburse Ann for her attorney fees; and (8) it improperly allocated the debt on the couple's equity line of credit. We agree with Ann as to the maintenance of the college fund, but disagree with her other contentions.

*Trial Court's Rejection of the Parties' Partial Settlement Agreement*

**{¶46}** "When parties enter into a settlement agreement in the presence of the trial court, such an agreement constitutes a binding contract and neither a change of heart nor poor legal advice is a ground to set aside a settlement agreement." *Maury v. Maury*, 7th Dist. No. 06 CA 837, 2008-Ohio-3326, ¶ 11, citing *Spercel v. Sterling Industries, Inc.*, 31 Ohio St.2d 36 (1972), paragraph one of the syllabus. A trial court is only empowered to set aside a property settlement agreement if there was "fraud, duress, * * * undue influence, or disagreement regarding [its] terms * * * " *Szmania v. Szmania*, 8th Dist. No. 90346, 2008-Ohio-4091, ¶ 10; *see also Walther v. Walther*, 102 Ohio App.3d 378, 383 (1st Dist. 1995) ("In the absence of * * * [a] factual dispute over the existence of terms in the agreement, the court may adopt the settlement as its judgment."). We review the trial court's order regarding property settlement agreements for abuse of discretion. *Schneider v. Schneider*, 110 Ohio App.3d 487, 491 (11th Dist. 1996).

**{¶47}** Here, Ann and David purportedly reached a one-page settlement agreement that was introduced into evidence as an exhibit. While both testified that the agreement was entered into voluntarily, they also stated that they believed the other party was concealing assets. David's concern in this regard served as a basis for his motion to set the agreement aside. Further, there was no testimony adduced from the parties that they approved the agreement or that it was final.

The face of agreement itself evinces its non-final and indefinite nature. It includes a number of handwritten revisions, is only one page long, and has no contractual language indicating the agreement's enforceability.

**{¶48}** In light of this evidence in the record, the trial court could reasonably find that David and Ann had not reached an agreement regarding material terms of the property division. Consequently, the trial court did not err in refusing to adopt the settlement agreement.

*The Status of Ann's Jewelry as Marital Property*

**{¶49}** In generating its division of marital assets, the trial court must determine what assets constitute marital property subject to division. R.C. 3105.171(B); *Stump v. Stump*, 3d Dist. No. 8-07-11, 2007-Ohio-6553, ¶ 7. A trial court's order characterizing property as marital or separate is upheld unless it is against the manifest weight of the evidence. *Eggeman,* 2004-Ohio-6050, at ¶ 14, citing *Henderson v. Henderson*, 3d Dist. No. 10-01-17, 2002-Ohio-2720, ¶ 28. Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C. E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus. When reviewing a judgment under this standard, an appellate court must presume that the findings of the trier of fact are

correct. *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

**{¶50}** Under R.C. 3105.171(A)(6)(a)(vii), separate property includes "[a]ny gift of any real or personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." Clear and convincing evidence is "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986). In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). Thus, we are required to assess whether the trial court's determination was supported by sufficient credible evidence to satisfy the requisite degree of proof. *In re McCann*, 12th Dist. No. CA2003-02-017, 2004-Ohio-283, ¶ 12.

**{¶51}** Ann produced minimal evidence to the trial court indicating that her jewelry was a gift. She provided no testimony that David gave any of the jewelry

to her as a gift. *Compare Dindal v. Dindal*, 3d Dist. No. 5-09-06, 2009-Ohio-3528, ¶ 31 (finding that jewelry was separate property since wife testified that it was a gift from her husband). It was Ann's burden to establish the existence of the gift and the only evidence that she offered was the fact that she possessed it. Such evidence does not satisfy the clear and convincing standard.

**{¶52}** As a result, we find that the trial court's order that Ann's jewelry was marital property is not against the manifest weight of the evidence.

*The Value of Ann's Jewelry*

**{¶53}** A trial court's valuation of marital property is only disturbed upon a showing of abuse of discretion. *Stringfield v. Stringfield*, 7th Dist. No. 05 MO 16, 2007-Ohio-1116, ¶ 17. Courts generally use "fair market value" when assessing the worth of personal property subject to division. *Id*. at ¶ 18. Fair market value refers to "the price which would be agreed upon in a voluntary sale between a willing seller and a willing buyer, who are both fully aware and informed of all circumstances involving the value of the items." *Id*., citing *Masheter v. Kebe*, 49 Ohio St.2d 148, 151 (1976).

**{¶54}** Here, the jeweler who prepared the appraisals of Ann's jewelry explicitly testified that all of the items together had a fair market value of $16,755. Contrary to Ann's contention in the merit brief, the jeweler gave no indication that

fair market value of the jewelry was actually 50 percent of this total. As a result, the trial court did not abuse its discretion in valuing Ann's jewelry at $16,755.

*Rental Property Left as Tenancy in Common*

{¶55} Generally, a parent is not obligated to support his or her child after emancipation or the child's obtainment of majority age. *See, e.g.*, *Hoffman v. Hoffman*, 32 Ohio App.2d 186, 190 (1st Dist. 1972). In support of her position that the trial court improperly ordered Ann and David to jointly hold the rental property that Jeremy occupies, Ann cites to *Maxson v. Maxson*, 4th Dist. No. 77-CA-391 (Apr. 9, 1979). There, the trial court granted ownership of the couple's cars to the husband with the requirement that the cars be left to the exclusive use of the couple's emancipated children. The court found this requirement to be improper and consequently reversed the order. *Id*.

{¶56} The trial court's order here does not create such an obligation. The order states that the award of the property to Ann and David "jointly allows them to continue to support their son as they have during the marriage, or alternatively, to sell the real estate and divide the equity between them." (Docket No. 93, p. 3). By its explicit terms, the order does not require Ann and David to support Jeremy. Rather, continued ownership and support for Jeremy is left to Ann's and David's discretion. As such, *Maxson* is inapplicable here and we find that the trial court's order regarding this property is not reversible.

*The College Fund*

**{¶57}** Unlike the rental property described above, the trial court explicitly ordered that the parties maintain $25,000 solely for the benefit of Dylan. Under *Maxson*, the trial court was not vested with authority to hand down such an order to benefit David's and Ann's emancipated child.[3] Thus, we find that the trial court's order in this regard was erroneous.

*The Health Savings Account*

**{¶58}** Trial courts are vested with broad discretion when fashioning equitable divisions of marital property. *Hendricks v. Hendricks*, 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶ 25. Accordingly, divisions of marital property are only reversed upon a showing of abuse of discretion. *Id.*

**{¶59}** Here, the trial court awarded the full value of the health savings account to David. This award was one prong of the trial court's overall distribution of David's and Ann's assets and debts. The distribution resulted in David being awarded a net amount of $793,540 and Ann being awarded a net amount of $811,581. Based on this nearly equal distribution, we cannot find that the trial court abused its discretion simply because the health savings account balance was not equally divided between Ann and David.

---

[3] We note that had Ann and David entered into a valid agreement as to the creation and maintenance of the $25,000 college fund for the benefit of Dylan, it is quite possible that the result would be different here.

*Attorney Fees*

**{¶60}** An award of attorney fees is generally disfavored. *Jones v. Jones*, 179 Ohio App.3d 618, 2008-Ohio-6069, ¶ 44 (3d Dist.). Under R.C. 3105.73(A), a trial court is empowered to provide an award of attorney fees if it finds that such an award would be equitable. "In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." R.C. 3105.73(A). The trial court has wide discretion in deciding whether to award attorney fees, *Rand v. Rand*, 18 Ohio St.3d 356, 359 (1985), and it will not be reversed absent a showing of abuse of discretion, *Jones* at ¶ 48.

**{¶61}** Here, the trial court stated that "in light of the amount of property divided and the other equities considered by the court, it does not appear that there is a sound basis" for an award of attorney fees." (Docket No. 93, p. 6). Our review of the record confirms that the trial court was within its discretion to reach this conclusion. Ann obtained a significant amount of property in the trial court's division of the marital assets. Further, she received $2,600 of temporary spousal support per month during the pendency of the divorce proceedings. And, she collected more than $10,000 in rent without having to pay for the properties'

maintenance. Consequently, we find that the trial court's denial of attorney fees was appropriate.

*Equity Line of Credit*

**{¶62}** A trial court must determine whether the debts of the spouses are marital or separate and subsequently divide them in an equitable manner. *See* R.C. 3105.171(F)(2); *Stump*, 2007-Ohio-6513, at ¶ 7. Consequently, trial courts are vested with the broad discretion in fashioning the allocation of marital debts and we only disturb such allocations upon evidence of an abuse of discretion. *Stump* at ¶ 8.

**{¶63}** The trial court's allocation of the debt due on Ann's and David's equity line of credit is one prong in the trial court's overall distribution scheme. David and Ann both incurred the debt on the credit line as it was used for a variety of things that benefitted both of them, such as the purchase of the rental properties and the payment of credit loans. The magistrate specifically stated that more of the debt was allocated to Ann because she was awarded all of the income-producing rentals and a greater amount of assets than David. Since the record supports this reasoning, we find that the trial court's allocation of this debt was not erroneous.

**{¶64}** Accordingly, we overrule Ann's fifth assignment of error. However, we sustain Ann's third assignment of error as it relates to the trial court's order

regarding Dylan's college fund. We overrule the remaining portions of Ann's third assignment of error.

*Assignment of Error No. IV*

**{¶65}** In her fourth assignment of error, Ann argues that the trial court erroneously abstained from addressing David's alleged failure to pay temporary spousal support in accordance with the trial court's order. Since the record reveals that David complied with the trial court's order, we disagree.

**{¶66}** The record is replete with evidence that David paid the temporary spousal support required by the trial court. Ann admitted that David paid the required $2,600 per month. However, she claims that David's payment of $2,000 towards a closed credit account was a violation of the order. This contention is not supported in the record. David testified that he did not know the account was closed or that Ann was using a different credit account during the divorce proceedings. Further, during discovery, Ann only disclosed the credit account on which David paid. In light of these facts, we do not find that the trial court improperly failed to order David to pay temporary spousal support arrearages.

**{¶67}** Accordingly, we overrule Ann's fourth assignment of error.

*Assignment of Error No. VI*

**{¶68}** In her sixth assignment of error, Ann asserts that the trial court incorrectly failed to hand down an award of spousal support. She essentially

argues that the trial court did not properly consider the factors enumerated in R.C. 3105.18(C)(1). We disagree.

**{¶69}** "As part of a divorce proceeding, a trial court has equitable authority to divide and distribute the marital estate, and then consider whether an award of sustenance alimony would be appropriate." *Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67 (1990); *see also* R.C. 3105.18(B) (authorizing spousal support awards). We review a trial court's decision regarding spousal support awards for abuse of discretion. *Watchowski v. Watchowski*, 3d Dist. No. 7-09-07, 2010-Ohio-1501, ¶ 24.

**{¶70}** When ruling on a request for spousal support, trial courts are instructed to consider the factors codified in R.C. 3105.18(C)(1). *Hardesty v. Hardesty*, 3d Dist. No. 1-07-29, 2007-Ohio-6420, ¶ 18. These statutory factors are as follows:

> (a)    The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b)    The relative earning abilities of the parties;
> (c)    The ages and the physical, mental, and emotional conditions of the parties;
> (d)    The retirement benefits of the parties;
> (e)    The duration of the marriage;
> (f)    The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
> (g)    The standard of living of the parties established during the marriage;
> (h)    The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
(l) The tax consequences, for each party, of an award of spousal support;
(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;
(n) Any other factor that the court expressly finds to be relevant and equitable. R.C. 3105.18(C)(1).

Further, the trial court must issue specific fact findings to enable appellate review of the spousal support order, its reasonableness, and the trial court's adherence to the statutory factors. *Crawford v. Crawford*, 3d Dist. No. 14-06-42, 2007-Ohio-3139, ¶ 47.

{¶71} The magistrate made extensive findings on each of the factors enumerated in R.C. 3105.18(C)(1). The trial court awarded her each income-producing rental property that the couple owned, except for the one occupied by Jeremy, of which Ann was given a one-half interest. Her overall allocation of assets from the marital property had a net total of $811,581, which amounts to more than David's net award. Based on this evidence and the extensive fact

findings provided by the magistrate, we do not find that the trial court abused its discretion in denying spousal support payments.

{¶72} Accordingly, we overrule Ann's sixth assignment of error.

{¶73} Having found no error prejudicial to Ann, in the particulars assigned and argued in the first, second, fourth, fifth and sixth assignments of error, but having found error prejudicial to Ann, in the particulars assigned and argued partly in the third assignment of error, we affirm in part, and reverse in part, the judgment of the trial court, and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and,*
*Cause Remanded*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**